### Susie Brown, Appellee, v. Chicago City Railway Company, Appellant.

#### Gen. No. 14,946.

1.   CONTRIBUTORY NEGLIGENCE—*failure to look and listen*   A person seeking to cross a street car track after emerging from behind a street car from which such person has alighted, is guilty of contributory negligence, which bars a recovery, in failing to look for a car approaching from the opposite direction.

2.   EVIDENCE—*when uncontradicted may be disregarded.*   Although evidence is uncontradicted it may be disregarded by the court and jury if it amounts to the statement of a physical impossibility.

3.   EVIDENCE—*relative value of positive and negative.*   Positive testimony that a gong was sounded is generally entitled to greater weight than negative testimony to the effect that it was not sounded.

Action in case for personal injuries. Appeal from the Circuit Court of Cook county; the Hon. JOHN A. GRAY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Reversed with finding of facts. Opinion filed April 8, 1910.

GEORGE W. MILLER, for appellant; JOHN R. HARRINGTON, of counsel.

JOHN F. WATERS and JOEL BAKER, for appellee.

MR. JUSTCE SMITH delivered the opinion of the court. A judgment was rendered in the Circuit Court for

$2,000 in favor of the plaintiff, appellee, against the defendant for injuries sustained by her on October 20, 1904, on State street, at the intersection of Thirty-first street, in Chicago.

At the time of the accident the defendant was operating grip-trains on State street. Plaintiff was a passenger in the last car of a south-bound grip-train. The train stopped on the south side of Thirty-first street with the rear end of the train a little south of but near to the south cross-walk of Thirty-first street. After the train had stopped plaintiff alighted from the rear platform of the car, walked a little to the north, turned to the east and started across the car tracks behind the train and was struck by a north-bound train. The plaintiff claimed that when she reached the corner of the car she looked to see if a train was approaching from the south, but saw none. When she got upon the east track she looked again and saw the north-bound train when it was only five or six feet away from her and running very fast. It was a little after eight o'clock in the evening and it was dark and rainy. The headlight on the train and the lights in the car were burning.

The claim and theory of the defendant is that the north-bound train approached Thirty-first street with its headlight and the lights in the train burning brightly. It stopped by the side of the south-bound train, with the front end a few feet south of the south cross-walk; that as the train approached the cross-walk the gong was rung and that just before it started to continue north the gong was rung again. As the train started the plaintiff walked east from behind the south-bound train, and was either caught by the northwest corner of the fender or collided with the northwest corner of the grip car, and was knocked to the ground between the tracks. The train stopped within a few feet of the point of the collision.

The question of liability, or more precisely the ques-

tion as to whether the plaintiff was guilty of contributory negligence, is the primary and controlling one in the case.

Five witnesses testified to the accident. The plaintiff and a man by the name of Smith testified on behalf of the plaintiff, and White, the conductor of the north-bound train, Elmer, a passenger on the south-bound train, and Eckstein, who was crossing State street at the place in question, on behalf of the defendant.

At the time of the accident defendant was operating street cars on State street over two parallel car tracks, by means of a cable. State street is a north and south street and Thirty-first street intersects it, running east and west. The cars going south on State street run on the westerly track, and those going north on the easterly track. The cars had been operated in this manner by cable for a long time prior to the accident.

The plaintiff testified that she entered the rear car of the train at Twenty-third and State streets, paid her fare and took a transfer on defendant's Thirty-first street line. The train stopped at Thirty-first street with the rear end of the last car just south of the south cross-walk of Thirty-first street. She stepped off the rear platform of the car and walked east behind the car to a point near the northeast corner of it and looked around the corner of the car for a north-bound train but did not see any; that she then walked on east and upon the north-bound track and again looked and saw the north-bound train only five or six feet from her and traveling very fast. She tried to get off the track but could not and the car struck her. She says that she was familiar with the way the cars ran, going north on the easterly track and south on the westerly track. The headlight of the north-bound train and the lights in the train were burning brightly, and the streets at that point were well lighted so that she could see a long distance north and south in State street. She says the car knocked her down and she was

dragged along on the ground across the street to the north walk or north side of Thirty-first street.

Plaintiff's witness Smith testified that he was on the east side of State street, and when he first saw the north-bound train and the plaintiff she was in the middle of the north-bound track in front of the north-bound train, which was about six inches or a foot from her. She was facing and walking east. He says that the north-bound train stopped first at the south side of Thirty-first street, and as it started up again the fender knocked the plaintiff down and she was dragged on the ground clear across Thirty-first street and some distance north of the north line of that street or in all over one hundred feet. This witness testified that the headlight and the lights in the cars of the north-bound train were burning. He says that no bell was rung on the north-bound train and that it was going "pretty fast." This witness further testified that at the time the south-bound car was passing over Thirty-first street the front end of the north-bound train and the south end of the south-bound train were less than ten feet apart, and both trains were moving. The south-bound car was moving when he first saw plaintiff. It was standing when he first saw her. This was the evidence on behalf of the plaintiff on the question of liability. Before discussing it we will briefly refer to the defendant's evidence.

The witness White was the conductor on the north-bound train. At the time of the trial he was a conductor in the employ of the Chicago Union Traction Co. At the time of the accident he was riding on the grip-car and was standing a little behind the gripman. He says he was in a position to see and did see the accident. As his train approached Thirty-first street the gripman rang his gong, and the train stopped on the south side of Thirty-first street while the south-bound train was standing there; that the headlight and the lights in the cars were burning. As his train

started up he heard the gripman shout, and looking up
he saw a colored woman right at the corner of the fen-
der, and that the grip-car knocked her down; that the
train after striking her ran a distance of about three
feet and stopped and the woman was not dragged at
all.   He testified that the gripman rang his bell before
starting the train and when the accident happened the
train was moving very slowly.

The witness Eckstein was a stationary engineer, em-
ployed by Rueckheim Bros. at the time of the trial.
He testified he was on the southeast corner of the
street intersection at the time of the accident, and had
started to cross from the east to the west side of State
street along the south cross-walk for the purpose of ·
taking the south-bound train which was standing there.
As he approached the east side of the north-bound
track the north-bound train started; that the headlight
of the north-bound train was burning.   He saw two
women "come running and one of them fell down," and
he thought the footboard struck her; that the train ran
probably two feet after she fell and she was not
dragged at all.   He testified that the north-bound car
stopped four or five feet south of the south cross-walk.
The gripman rang his bell as the train started, and the
woman ran into the front end of the footboard.

The witness Elmer was a passenger on the south-
bound train riding on the rear platform of the rear car.
He saw the two colored women get off the car and pass
around to the rear end of it, and start to cross the
tracks.   The ringing of the bell of the north-bound
train first called his attention to that train, and when
he first saw it the grip-car was just even with the rear
end of his car and it was moving "very slowly."   The
woman ran into the forward part of the grip-car which
struck her about the ankles.   She was knocked down,
and she was was not dragged at all.   The car stopped
almost immediately.   This witness thought or was un-
der the impression that the north-bound train did not
stop south of Thirty-first street.

From the evidence of the plaintiff herself it appears that the north-bound train was right there at the crossing and in full view when she stepped upon the track in front of it. Even though it were moving as fast as she says it was (which we cannot believe), the train was in full view and near by, and there was nothing to obstruct her view, after she emerged from behind the car from which she had alighted, or from the northeast corner of the car. If she looked, as she says she did, before going upon the north-bound track, and did not see the train, it must have been when she was behind the south-bound train and when it was useless to look. It is clear from her testimony, when considered by itself, that if she had given the most casual glance and exercised the slightest care for her own safety when she emerged from behind the south-bound train, she would have seen the north-bound train with its headlight burning. She says, however, she did not look the second time until she was in the north-bound track, and the train was within four or five feet of her, and it was too late for her to escape. This was failing to observe due care, blindly walking into a danger which the observance of due care would have enabled her to avoid, and in so doing she was guilty of contributory negligence. C., M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248; Hornstein v. United Railways Co., 195 Mo. 440; Doty v. Detroit Citizens Ry. Co., 129 Mich. 464. "The rule is perfectly plain that a person must look where he is going" (Buzby v. Phil. Traction Co., 126 Pa. St. 559) in a large city where double track lines of street cars are operated, and if he does not, when he has the opportunity and steps into a place of danger in attempting to cross a public street, it is evidence of a failure to exercise due and ordinary care. Lake Street El. R. R. v. Gormley, 108 Ill. App. 59.

When we consider the other testimony in the case, the proof amounts to a conclusive demonstration that plaintiff was guilty of negligence which directly caused her injury. The testimony of plaintiff's witness Smith

is both contradictory and unreasonable. His testimony is not entitled to much weight for that reason, except as to those statements in which he is corroborated by other witnesses. This witness is corroborated in his testimony as to two facts (1) that the lights on the north-bound train, including the headlight, were burning, and (2) that the train stopped just south of Thirty-first street and plainiff was struck as it started north. But these facts make it impossible that the train was going at a high rate of speed before it struck the plaintiff, and that it was not clearly and plainly to be seen by the plaintiff before she stepped upon the north-bound track. It is obvious that if the north-bound train stopped just south of the south cross-walk of Thirty-first street, as stated by Smith, White and Eckstein, it could not have attained the rapid speed which plaintiff and Smith testified to in moving the few feet before it struck the plaintiff. That it was moving slowly is shown by the positive and direct testimony of White, Eckstein and Elmer, and also by the testimony of Smith when his testimony is analyzed and tested by the physical possibilities and impossibilities of the situation. And further, if the train stopped south of Thirty-first street before it struck the plaintiff, it is physically impossible that plaintiff could have failed to see it before she stepped in front of it. Hence, the testimony of plaintiff that she looked and did not see it, although uncontradicted may be disregarded by the court and jury. In Quock Ting v. United States, 140 U. S. 417, the court said: "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by anyone, should control the decision of the court, but that rule admits of many exceptions. There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony." To the same effect are Highley v. American Exchange Nat. Bk., 86 Ill. App. 48, 57; C. P. & St. L. Ry. Co. v. De Freitas,

109 id. 104; C. & A. R. R. Co. v. Vremeister, 112 id. 346; Stafford v. Chippewa Valley E. R. R. Co., 110 Wis. 331; Thompson on Negligence, Vol. 2, Sec. 1445.

We are of the opinion from the evidence that the gong of the north-bound train was sounded when the train started and that plaintiff was near enough to it to have heard it if she had been listening. The positive testimony in the record that the gong was sounded is generally entitled to greater weight than the negative testimony that it was not sounded, in other words, that the witnesses did not hear it.

The only conclusion which we can draw from the evidence as reasonable men is that the plaintiff was guilty of contributory negligence and that she is therefore not entitled to recover. This conclusion upon the evidence necessarily disposes of the case and makes it unnecessary for us to consider the alleged errors of the trial court in refusing instructions tendered by the defendant.

The judgment of the Circuit Court is reversed with a finding of fact.

*Reversed with finding of fact.*