# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

## THE ILLINOIS CENTRAL RAILROAD COMPANY

### *v.*

## EMMA GRIFFIN.

*Opinion filed February 19, 1900.*

1. APPEALS AND ERRORS—*when refusal to instruct for defendant must be sustained.* The Supreme Court will sustain the trial court's refusal to instruct the jury to find for the defendant, unless the evidence, with all the inferences to be properly drawn therefrom, is so insufficient that a verdict, if returned, would have to be set aside.

2. NEGLIGENCE—*what not reckless conduct on part of plaintiff.* It is not necessarily reckless conduct for a farmer's wife, holding a baby in her lap, to attempt to drive a three-year-old filly across a railroad track when no train was near, where she is an experienced horsewoman, having handled horses from childhood, and the filly was well broken and had previously been quiet and gentle.

3. SAME—*duties of person approaching railroad crossing with horses.* One approaching a highway crossing with a horse is required to look out for trains but is not obliged to look for or anticipate other dangers calculated to frighten horses; since the statute requires a railroad company to keep highway crossings and approaches in a condition safe for persons and property.

4. SAME—*company is responsible if cinders piled in highway constitute a nuisance.* Cinders dumped from cars and so piled among the weeds

and upon the highway as to leave only ten or fifteen feet available for travel, and in such a condition as is liable to frighten horses, must be regarded as a nuisance, for which the company is responsible to one whose horse takes fright thereat, even though they are but temporarily so placed, preparatory to use in ballasting.

5. INSTRUCTIONS—*instruction should not specify what conduct is imprudent.* An instruction which attempts to specify what conduct on the part of plaintiff is imprudent is properly refused, that question being one of fact for the jury to determine from the evidence.

6. EVIDENCE—*what incompetent in action for injury from frightening horse.* In an action for injuries to the plaintiff, occasioned by her horse taking fright at a pile of cinders near the highway crossing and running away, it is not error to exclude evidence that the horse ran away a second time a week or ten days after the accident.

*Illinois Central Railroad Co.* v. *Griffin,* 84 Ill. App. 152, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. TRUMAN E. AMES, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the Fourth District affirming a judgment of the circuit court of Marion county.

The facts in the case, as shown by the record of the trial court, are substantially as follows: Appellee, Emma Griffin, in July, 1897, was living two and a quarter miles north-east of Patoka, a station on defendant's railroad. On the 22d of July she started to Patoka about seven o'clock in the morning. She traveled in a light spring wagon drawn by a three-year-old filly. She had with her a babe two months old. The babe lay in her lap and rested on her left arm while she drove the filly with her right hand. There was also in the wagon a basket of butter and a five-gallon coal-oil can. The route she traveled to Patoka led southward to a road that ran east and west and crossed the railroad of appellant. The road ran through a cut and was slightly descending toward the crossing. The part of the highway on the south side of the beaten road had a growth of weeds upon it. Some

days before July 22—one *witness states from ten* to twenty days—appellant, in order to raise and ballast its track, including that portion where the road referred to crossed the railroad, unloaded several car-loads of cinders north and south of the crossing and on a part of the highway at the crossing. The cinders were thrown in ricks or ridges alongside the railroad track and extended twelve or eighteen inches above the ends of the ties. They extended from a point south of the traveled road twenty-five or thirty feet, to the cattle-guard, leaving a space of ten or fifteen feet of the beaten track of the highway for the passage of vehicles. Appellee drove toward the crossing, and when within about ten feet of the rails the mare scared, gave a jump and ran across the railroad track. When the mare jumped appellee pushed the child between her knees and got hold of the reins with both hands, but was not able to stop her. When two hundred yards west of the crossing the mare overturned the spring wagon and threw appellee on the hard ground, and she received the injuries complained of.

The declaration contained three counts. The first count charged that appellant caused certain cinders to be conveyed to a point where its railroad is intersected by the public highway, and negligently caused the same to be unloaded upon the public highway adjacent to its tracks, which cinders were so negligently unloaded as to lay in a pile and thereby create an object that would frighten horses; that her horse did frighten, etc. The second count was substantially like the first. The third count avers that there was then growing upon that portion of the highway on both sides of the beaten roadway adjoining appellant's track, and upon its right of way adjoining said highway, a large amount of tall weeds, and that the cinders were negligently so placed as to be so hidden by the tall weeds, as not to be visible to one approaching on the highway until within a few feet of them, and that thereby the cinders became an object

likely to frighten a reasonably gentle horse and cause the same to become unmanageable, and that appellee's horse did frighten, etc. To the declaration the appellant pleaded the general issue.

WILLIAM H. GREEN, (J. M. DICKINSON, of counsel,) for appellant.

W. F. BUNDY, and FRANK F. NOLEMAN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The principal part of the argument of appellant is devoted to a discussion of the evidence, with a view of showing that the circuit court erred in refusing to instruct the jury to find for the defendant. It is a misapprehension of the law to suppose that this court, on an appeal from a judgment of the Appellate Court, where an instruction of that character has been refused, will review the evidence and determine its sufficiency to support the verdict. That is the province of the Appellate Court, but this court does not pass upon controverted questions of fact and determine the weight of the evidence or its sufficiency to support the judgment. Where an instruction to find for the defendant has been refused, as was the case here, the judgment of the court refusing the instruction will be sustained, unless the evidence, with all the inferences which the jury could fairly and rationally draw from it, is so insufficient to support a verdict, that such verdict, if returned, would for that reason be set aside. (*Offutt* v. *World's Columbian Exposition*, 175 Ill. 472). Under the rule laid down in the case cited, and other similar cases, we may look at the evidence to determine whether it tends to support the judgment, but we can go no further.

It is said that the plaintiff, in a case of this character, must prove due care at the time of the accident. Conceding this to be true, it was a question of fact for the jury to determine, from all the evidence, whether the

plaintiff was in the exercise of due care, and if there was evidence introduced fairly tending to show due care on the part of the plaintiff, it was the duty of the court to refuse the application of appellant to take the case from the jury.

It seems to be supposed on the part of appellant's counsel that it was reckless conduct for a woman with a baby in her lap to undertake to drive a three-year-old filly in a spring wagon on a public highway over a railroad crossing, but when all the evidence is considered there is no just ground for counsel's position. Appellee was a farmer's wife. She had been raised in the country from childhood. She had been in the habit of handling horses all her life. She had driven them on the road to buggies and worked them on the farm. She had hauled milk to the creamery and had driven reapers and mowers. She had handled horses ever since she was large enough to hold the plow handles, and she could, as the witnesses testify, manage them "as well as anybody." All the witnesses concurred in the fact that plaintiff was an excellent horse-woman, and a number of witnesses testified that she could manage horses "as good as a man." As to the animal plaintiff was driving, she was, it is true, a three-year-old filly; but she was gentle, well broken to harness, and had often been driven to harness, both single and double. The plaintiff had ridden behind the mare many times before the accident and always found her quiet and gentle. On the day in question the plaintiff had some butter to market and desired to purchase some coal oil to use in the house. She hitched the mare to the wagon, loaded in her butter and the oil can, took her babe and started for town. She was met on the road by several parties, who testified that the mare was traveling along quietly and gently. Thus far there seems to have been no want of ordinary care on the part of appellee. It was, however, her duty upon approaching the crossing to be on her guard in regard to passing trains,

but as no train was approaching she had no reason to apprehend any other danger. On the other hand, as the statute required the railroad company to keep and maintain its highway crossing and the approaches thereto in such condition that they should be safe to persons and property, appellee had the right to presume that the railroad company had discharged its duty, and she was not required to look for or anticipate other dangers calculated to frighten her mare. She approached the crossing in a walk, driving in the usual manner, but when within ten feet of the crossing the mare suddenly became frightened at the cinders in the highway, shied and started to run. Appellee, as she testified, immediately pushed the babe between her knees, and, holding the reins in both hands, before the crossing was reached, attempted to check the speed of the mare but was unable to do so. From the evidence there was nothing to show a want of ordinary care on the part of appellee, but, on the other hand, the evidence, when all considered, tended to prove the exercise of ordinary care on her part.

It is also claimed in the argument that no negligence was shown on the part of appellant, and that upon this ground no recovery could be had. The acts of negligence charged against appellant are set forth in the first and third counts of the declaration as abstracted by appellant's counsel and found in the statement preceding this opinion, from which we understand the charge to be, that appellant was guilty of negligence in piling cinders upon the public highway near the traveled part thereof, where they would be likely to frighten horses which were driven along the public highway by persons traveling on the highway. The fact that the cinders were unloaded in piles in the highway several days before the accident was clearly established by the evidence, and upon this question there was practically no conflict in the evidence. The cinders were piled in the highway, which was at least forty feet wide, so that only from ten to fifteen feet of the

highway was left available for public travel. They came so close to the traveled path of the road that one witness testified, in passing the fore wheel of his buggy ran into the cinder pile on the south side of the highway. These cinders were black and much darker than the soil. The testimony tends to prove that the cinders as piled by the railroad company in the highway and in the weeds near the crossing would frighten horses driven along the highway. One witness, who drove over the crossing about one hour after the accident, testified that he was driving an old horse, and when he came to the crossing his horse got frightened at the cinders in the public road and he had trouble to get across. There was other evidence of a similar character, so that there was ample evidence tending to prove that the cinders placed in the highway by appellant were calculated to and did frighten the teams of persons who had occasion to pass over the highway.

It is said, however, temporary obstructions of the highway necessary for the conduct of business or the use of adjoining premises are allowable, and in support of this position a note in 9 American and English Encyclopedia of Law is cited, (1st ed. p. 413,) as follows: "Temporary obstructions necessary for the conduct of business or the use of the adjoining premises are allowable. Thus, it is no nuisance to place building material in the street, provided it is not left in such a condition as to entirely obstruct the way or endanger the passers-by." We shall not stop to discuss the question whether a person has the right to obstruct a street of a city without the consent of the city authorities or whether a person may obstruct a public highway without the consent of the commissioners of highways, but, under the authority cited, if the obstruction may endanger passers-by then it would constitute a nuisance. Here, under the authority cited, the obstruction in the highway did endanger the traveling public and must be regarded as a nuisance.

It is next claimed that appellee's first instruction is erroneous, because, as is claimed, certain facts are singled out and others are omitted. Upon examination of the instruction it will be found that it does not single out isolated portions of the evidence and direct the jury to consider them, nor does it give undue prominence to certain parts of the testimony, but it merely directs the jury, if they find certain enumerated facts established from the evidence they may find the issues for the plaintiff. We do not regard the instruction as erroneous.

It is also claimed that the court erred in refusing a certain instruction of defendant which read as follows:

"If you believe, from the evidence, that the plaintiff was guilty of an extremely imprudent act in driving the three-year-old filly, with a baby in her arms, and that her imprudence in driving over the railroad under the circumstances contributed to her injury, you should find the defendant not guilty."

The instruction, in effect, informs the jury that plaintiff was imprudent in driving over the railroad track, and for this reason, if for no other, it was properly refused. It was for the jury to determine, from the evidence, whether plaintiff was negligent or imprudent, and it was not the province of the court to tell the jury that a certain act was imprudent or negligent. Moreover, all that was contained in the instruction proper for the jury was given in appellant's second instruction.

It is also claimed that the court erred in excluding the evidence of a witness offered to show that the mare ran away a week or ten days after the accident. The fact that the mare may have run off some time after the accident did not show that she was unsafe when the accident occurred. It is a matter of common observation that a horse rarely, if ever, recovers from a runaway accident so that it becomes gentle and safe. If the disposition of the mare was ruined by the first runaway at the railroad crossing, the fact that she may have run away

again had no bearing on the disposition of the mare at the time of the first accident. The court also properly refused to permit defendant to prove what the owner of the mare said, in the spring of 1897, in regard to her working at the plow, for the reason that the statement was mere hearsay, and, as such, not admissible.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*