## Western Union Telegraph Co. v. John J. Woods, by his Next Friend.

1. CARRIERS OF PASSENGERS—*Persons Operating Passenger Elevators.* —Persons operating elevators are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to those operating elevators for raising and lowering persons from one floor to another in buildings. It is the duty of such carriers of passengers to use extraordinary care in and about the operation of such elevators so as to prevent injury to persons therein.

2. SAME—*Degree of Care to be Exercised by Carrier of Passengers by Elevator.*—A carrier of passengers by elevator is bound to exercise the highest degree of human care, vigilance and foresight which is reasonable under the circumstances, and in view of the character of the mode of conveyance adopted, reasonably to guard against accidents.

3. INSTRUCTIONS—*Erroneous, as to Measure of Damages.*—An instruction which allows the jury to assess in the plaintiff's favor all damages, present or future, which from the evidence appear to be the necessary and direct result of the injury, which would include damages for loss of time while plaintiff could not work, and any loss which might result from his inability to earn as much as he could have earned but for the injury, for the period between the time of the injury (when he was fifteen years old) and his majority, is erroneous, because either of these items of damage could be recovered in a suit by the father, and for that reason they were not proper elements for the jury to consider in a suit by the minor in his own behalf.

Action in Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1899. Reversed. Opinion filed April 9, 1900.

**Statement by the Court.**—Appellee, who was a minor aged fifteen years, on August 25, 1896, lost the thumb of his left hand by having it caught and crushed between the

cage and elevator wall of appellant's building in Chicago, and brought an action to recover for his injuries, upon the trial of which before the court and a jury he recovered a verdict and judgment thereon for $2,000, from which this appeal is taken.

The declaration charges that appellant negligently " constructed and maintained " one of its elevator cages so close to one of the walls of the elevator shaft, and that it was so insufficiently guarded, that there was great danger of a person riding in said cage being caught and crushed between said cage and wall, which appellant knew or could have know by the exercise of due care, but which fact appellee did not know, and that appellee, while a passenger riding upward in said cage and in the exercise of ordinary care and caution for one of his years, by reason of said " negligent construction," had his thumb caught and crushed between the cage and elevator wall.   The plea was the general issue.

The evidence shows that plaintiff was engaged as a messenger boy by appellant, and at the time of the injury was going into the building of appellant, which was eight stories in height, to collect a bill for appellant from its tenant, whose office was in the upper part of the building; that he was accustomed to use the elevators (which were six in number) of this building, and was familiar in a general way with their construction; that the elevators faced to the north, and extended across the entrance way to the building from east to west; that he entered the second elevator from the west, the cage of which was about four by five and one-half feet, the ends and back of which were of solid wood to the height of about three and one half feet, or coming to about the middle of plaintiff's body as he stood in the cage; that above the wood work there extended around the cage an iron grill or scroll work about eight inches in width, in which there were small openings of different sizes ranging from half an inch to an inch and larger, some of them being of sufficient size, and of oval shape, to permit plaintiff's hand to be inserted through the opening.   One of the witnesses

states that these oval openings were large enough to allow an egg to go through, to put a small hand through—a boy's hand. Above this scroll work the back and ends of the elevator were of glass.

When the boy entered the elevator he took his stand near (as he testifies) the southeast corner of the cage with his back "kind of toward the east," and put his hand on the back or south side of the cage at the scroll work. He also said that just as he went into the cage he took some bills from his pocket, looked them over, got the one he wanted, put the rest in his pocket, and when the elevator started up he leaned back; that he was then about a foot or two feet from the south side of the cage and about a foot from the corner. "I was just standing there. I wasn't doing anything. I do not remember taking hold of the grill work. I do not remember fingering the oval there. I did not do it. I think my hand went into the oval, but I would not be sure whether it was the oval or not." The elevator then started up, and when it had reached about the first floor, plaintiff's thumb having extended through one of the openings in the scroll work was caught between the elevator wall and the cage and so badly crushed that it was necessary to cut it off back to where it joins the wrist. By reason thereof plaintiff lost two or three months' work. The place where the elevators were located was well lighted. There was a window to the south and back of each elevator, the glass of which was from ten to eighteen inches from the elevator cage, but the wall of the elevator shaft at places was only from one-half inch to one inch from the cage as it passed up or down in the opening. Plaintiff had used the elevator in which he was hurt prior to the day of the accident. He knew, in a general way, of the position of the cage in the elevator well, but did not know that the cage was so close to the wall before the accident. He was a boy of average intelligence and understanding for one of his age, if not above the average in intelligence. Only two persons were present with the plaintiff in the cage at the time of the accident, the conductor and the witness Wickersham. The latter testifies, speaking of the accident:

" The whole thing occurred within a few seconds, or probably the fractional part of a minute. As I entered the elevator the boy was in the elevator. * * * In the grill work was an oval—an oval shaped ring—and the boy had his hand doubled up and stuck through there as I entered, and I spoke to him and I said, ' Look out there, you will hurt yourself.' He made no reply, and I turned my back to him, as he had his back to the elevator, and all of a sudden the elevator started; I heard him cry, the elevator stopped almost instantly, and I lifted him out of the elevator into the hall."

On cross-examination this witness testified that the boy stood in the southwest corner of the cage with his back to the entrance to the elevator, that he " had his hand folded up, putting his fingers through. I saw him put his fingers through and the ball of his hand, apparently as far as he could get them through. * * * I saw this boy in the southwest corner of the elevator jabbing his hand through this oval. I told him he had better look out, he would be hurt; then he took his hand out for a minute;" and when asked whether the boy put it back again, the witness answered, " I presume he did. He took it away when I first spoke to him. He took it out and turned to me and I turned my back to him. * * * The last time I saw him his hand was out."

The conductor of the elevator testified that about the time he was getting ready to start he heard Wickersham say something to the boy, who was back of the witness; that he didn't hear what Wickersham said; that when he started up he felt a jar and heard the boy " holler," and witness stopped the elevator; that Wickersham " assisted to help the boy out; I went to the bottom and the boy jumped out." On cross-examination this witness said that the boy was in the south part of the elevator, but could not say in which corner he was; also that at a glance a person standing in the elevator would imagine that there was seven or eight inches between the cage and the nearest projection of the wall.

The witness Deermans, who testified that he was a mechanical engineer for about sixteen years, and most of the time in the elevator business, said that the elevator in

question was an ordinary passenger elevator, and after describing its structure in substance as hereinbefore stated, said that the "elevator rests as close to the wall as they ordinarily run. It is from one to two inches." And in speaking of the proximity of the elevator to the wall of the building, he said:

" This elevator in that regard is set up in the usual, ordinary manner of elevators in the city of Chicago, and was the same in that regard in 1896. With reference to the proximity to the building it was set up as elevators are set up in ordinary practice. It was a standard elevator at that time in its construction."

On cross-examination this witness said : "The distances that those elevators set from the wall are as various as the buildings."

Dr. Stewart, who dressed plaintiff's hand immediately after the injury, testified that he asked the boy how he received the injury, and that the boy replied that he received it in the elevator of the Western Union Building; that witness asked him who was to blame, to which the boy replied, "There was no one to blame except himself."

On rebuttal the plaintiff denied that he told the doctor that it was his own fault and nobody was to blame, denied that he was sticking his hands or fingers into the scroll or oval of the cage when Wickersham came into the elevator, and denied that Wickersham spoke to him.

At the close of the plaintiff's evidence, and also at the close of all the evidence, the appellant asked the court to instruct the jury in writing to find the defendant not guilty, which instructions were refused.

Among other instructions given for appellee was the following:

" If, under the evidence and instructions of the court the jury find the defendant guilty as charged in the plaintiff's declaration, then in estimating the plaintiff's damages it will be proper for the jury to consider the effect of the injury in the future upon the plaintiff, the use of his hand, and his ability to attend to his affairs generally, if the evidence shows that these will be affected in the future; and also the bodily pain and suffering he sustained, if any,

and all damages, present and future, if any, which from the evidence appear to be the necessary and direct result of the injury complained of."

WALL & ROSS and WM. M. JOHNSON, attorneys for appellant.

JAMES C. MCSHANE, attorney for appellee.

MR. JUSTICE WINDES delivered the opinion of the court.

It is claimed by appellant, in substance, first, that the court erred in not directing a verdict for defendant at the close of the plaintiff's case, and also at the close of all the evidence; second, that the jury was erroneously instructed; and, third, that the verdict is against the clear weight of the evidence and is excessive.

It is said that as under the declaration defendant is charged with having negligently constructed and maintained its elevator cage, and as there is no evidence to prove the negligent original construction of the elevator cage, the plaintiff's case must fail for that reason. We think this contention is not tenable, and that it is sufficient to allow the plaintiff to recover under this allegation if he proved that the defendant negligently maintained the cage.

The majority of the court (not including the writer) is of opinion that the evidence, the substance of which has been recited in the statement preceding this opinion, is insufficient to show any negligence of the appellant, as alleged in the declaration; that an elevator cage constructed and maintained as it is shown the one in question was made, is reasonably safe for the carrying of passengers therein; that the fact that the grill or scroll work extending around the cage of the elevator at the height of about three and one-half feet from the floor had small openings in it of sufficient size to allow the thumb or finger of a person to be put through such openings so as to come in contact with the wall of the elevator well, and the further fact that the wall of the elevator well was only from a half inch to an inch from the outside of the back of the cage, did not make it negligent for the defendant to operate the elevator in the

carrying of passengers under these circumstances; and that as to whether or not there was negligence in the defendant's operating the elevator under such circumstances, is a question upon which there could be but one conclusion by reasonable, intelligent and fair-minded persons, viz., that it was not negligence.

It is now the settled law in this State that the liability of a person or corporation operating a passenger elevator to passengers rightfully riding thereon, as was the case with the plaintiff, is the same as that of common carriers by steam railways. Hartford Dep. Co. v. Sollitt, 172 Ill. 225; Field v. French, 80 Ill. App. 78; Hodges v. Percival, 132 Ill. 53; C. & A. R. R. Co. v. Arnol, 144 Ill. 272; C. & A. R. R. Co. v. Byrum, 153 Ill. 135.

In the Sollitt case, *supra*, the Supreme Court say:

" Persons operating elevators are carriers of passengers, and the same rules applicable to other carriers of passengers are applicable to those operating elevators for raising and lowering persons from one floor to another in buildings. It is a duty of such carrier of passengers to use extraordinary care in and about the operation of such elevators so as to prevent injury to persons therein."

In the Field case, *supra*, this court said, in speaking of the liability of the carrier of passengers by elevator:

" The rule is that the carrier must exercise the highest degree of human care, vigilance and foresight which is reasonable under the circumstances, and in view of the character of the mode of conveyance adopted, reasonably to guard against accidents."

In the Arnold case, *supra*, the Supreme Court in speaking of the liability of the carriers of passengers by a steam railway, say :

" Ordinarily carriers of passengers for hire, while not insurers of absolute safe carriage, are held to the exercise of the highest degree of care, skill and diligence, practically consistent with the efficient use and operation of the mode of transportation adopted."

In the Byrum case, *supra*, the Supreme Court in passing upon the liability of a railway company to its passengers,

held that an instruction which contained the following language stated the law correctly, viz. :

"Common carriers of persons are required to do all that human care, vigilance and foresight can reasonably do, consistently with the character and mode of conveyance adopted and the practicable prosecution of the business, to prevent accidents to passengers riding upon their trains."

And in the same case the court also approved as the law the following language in an instruction which, after stating the duty of the carrier substantially as above, said :

"While the carrier is not an insurer for the absolute safety of the passenger, it does, however, in legal contemplation, undertake to exercise the highest degree of care to secure the safety of the passenger, and is responsible for the slightest neglect resulting in injury to the passenger."

The instruction further providing that the passenger should be in the exercise of ordinary care.   The court also held that this duty of the carrier " applies alike to the safe and proper construction and equipment of the road."

In view of the law as held by these decisions, the majority of the court, not including the writer, is of opinion that it is not reasonable that appellant should, at the peril of being found negligent toward persons riding in its elevator, be required to construct the back and ends of its elevator with solid wood, glass or metal, so that passengers would thereby be safe from the danger or risk to which plaintiff was exposed by the open spaces in the iron grill or scroll-work of its elevator.   In other words, that to so hold would make appellant an insurer of its passengers against accident.

The writer can not give his assent to this ruling, and is of opinion that, under the evidence, whether or not appellant was guilty of negligence, was a question of fact for the jury, as to which intelligent, reasonable and fair-minded persons might reasonably reach different conclusions.   The duty of the carrier in such a case is to use " the highest degree of care, skill and diligence practically consistent with the efficient use and operation of the mode of transportation adopted."

Also, that duty requires that the carrier should "do all that human care, vigilance and foresight can reasonably do," consistent with the mode of conveyance and the practical prosecution of the business to prevent accidents, and is "responsible for the slightest neglect" which results in injury to a passenger. Can it be said appellant has used the highest degree of care consistent with the practical operation of its business reasonably to guard its passengers? Can it be said that if all had been done that human foresight could reasonably have suggested, the practical operation of appellant's elevator being considered, the holes in this scroll-work should not have been closed? Can it be said that appellant has not been guilty of the slightest neglect in operating its elevator with this open scroll-work? Can it be said that it would be unreasonable to require that appellant's elevator should have been constructed without any holes through the back and ends? The writer thinks these were all matters for the consideration of the jury, in the first instance, and that a verdict that appellant was negligent as charged, can not be said to be manifestly against the evidence.

As to the question of appellee's care to avoid injury, the evidence was sufficient to justify its submission to the jury; but we are of opinion that the clear preponderance of the evidence is that plaintiff did not exercise ordinary care for his own safety. The plaintiff himself, as appears from the statement preceding this opinion, is not clear as to how his thumb came to be inserted through the grill-work so as to be injured. A reasonable conclusion from his evidence is, that he raised his hand involuntarily when the elevator started, to brace himself, and, in so doing, passed his thumb through a hole in the grill-work; or, that he carelessly and thoughtlessly, without thinking about the liability to danger, put his thumb through the hole; or, that he was misled by the distance of the window-glass from the outside of the cage, and playfully inserted his thumb through the grill-work in the belief that he incurred no danger.

As against the evidence of appellee, the witness Wicker-

sham testified positively that he warned appellee of the danger, seeing him, as the witness says he did, insert his fingers through the oval in the grill-work. This evidence is corroborated by the conductor, who said that he heard Wickersham say something to the boy about the time the elevator was ready to start, but did not hear what it was. The doctor also testified that the boy said to him, immediately after the accident, "There was no one to blame except himself." It is true, the boy contradicts the evidence of both the doctor and Wickersham, but in view of the uncertainty in the boy's evidence, we are of opinion that it is clearly overcome in this respect by the evidence for appellant.

The fifth instruction given for plaintiff is clearly misleading, if not erroneous, because it allows the jury to assess, in plaintiff's favor, all damages, present or future, which, from the evidence, appear to be the necessary and direct result of the injury. This would include damages for loss of time while plaintiff could not work, and any loss which might result from his inability to earn as much as he could have earned but for the injury, for the period between the time of the injury (when he was fifteen years old) and his majority. Either of these items of damage could be recovered in a suit by the father, and for that reason they were not proper elements for the jury to consider in a suit by the plaintiff in his own behalf. The instruction, had the suit been by an adult, would have been entirely proper.

Other criticisms are made as to other of appellee's instructions and as to the modification and giving as modified of two of defendant's instructions, but we are of opinion that there was no error in any of these respects. The two of defendant's instructions, as asked, tell the jury that certain acts of the plaintiff, if believed from the evidence, would preclude his recovery, or, in other words, that such acts showed a want of ordinary care. This was error. I. C. R. R. Co. v. Griffin, 184 Ill. 9.

The instructions were so modified as to leave to the jury the question as to whether or not the facts specified in the

instructions showed negligence on the part of the plaintiff, and the giving of the instructions so modified was not error.

In view of the conclusion reached by the majority of the court, it is unnecessary to consider the other questions argued.

The judgment is reversed.