William  Ballentine,  Appellee,  v.  Illinois  Central  Railroad Company,  Appellant.

Gen.  No.  15,084.

1. APPEALS AND ERRORS—*duty of Appellate Court upon review of evidence.*  The duty of the Appellate Court, upon an appeal by a defendant from a judgment for plaintiff when errors are assigned which require the evidence to be weighed, is not "to review the testimony and determine upon which side is the greater weight of the evidence" but its duty is to review the evidence and determine whether the plaintiff has established his case by a preponderance of the evidence.

2. NEGLIGENCE—*at railroad crossings.*  It is possible in point of law that at the crossing of a railroad and a public highway the railroad company can create such a situation or condition or such circumstances by its trains, the placing of its cars or otherwise, that the speed of a

train passing over the crossing although not so great as to be prohibited by statute or ordinance, may yet be an act of negligence.

3. NEGLIGENCE—*what not proximate cause.* *Held,* under the evidence in this case, that the act of the parent of the plaintiff, who was an immature child, in sending such child upon an errand which brought him into a place of danger, was not the proximate cause of the injury suffered; that at most it was but a contributing cause which did not relieve the defendant from the liability established against it by the negligence shown by the evidence.

4. INSTRUCTIONS—*when upon question of care by parents of plaintiff properly given.* If it appears that the negligence, if any, of the parents of the plaintiff, who was a child of immature years, was not the sole cause of the injury to such child, it is proper for the court to instruct the jury that it was "entirely immaterial what care the plaintiff's parents used" etc.

5. INSTRUCTIONS—*when upon damages in action for personal injuries by minor will not reverse.* Notwithstanding an instruction in such a case is broad enough to have entitled an award upon account of loss of earning capacity by a minor during minority, yet such instruction will not reverse if the parents of such minor have individually participated in the prosecution of the action, as thereby such parents estop themselves from recovering damages upon their own accounts.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1908. Affirmed. Opinion filed October 21, 1910. Certiorari denied by Supreme Court (making opinion final).

CALHOUN, LYFORD & SHEEAN, for appellant; JOHN G. DRENNAN, of counsel.

FRANCIS J. WOOLLEY, for appellee.

MR. JUSTICE CHYTRAUS delivered the opinion of the court.

Between 7:30 and 8 o'clock in the morning of January 30, 1907, plaintiff's right leg was so crushed above the ankle that amputation, at a point about five inches below the knee, became necessary. He was born April 21, 1900. He, therefore, lacked a little less than three months of being seven years of age when injured. His father, Charles Ballentine, brought suit on his behalf against the defendant for causing the injury. Upon a trial by jury, had in May, 1908, a verdict was returned in favor of plaintiff for $7,375 and judgment

was rendered upon that verdict. This appeal is prosecuted from that judgment, by the defendant.

Plaintiff claims that in attempting to cross, from west to east, the north and south right of way of defendant, upon the north sidewalk of 80th court or place, which street crosses defendant's right of way, he was run over by a locomotive of the defendant. At 80th court and the vicinity thereof the right of way is 50 feet in width. There is a space about ten feet wide in the center of the right of way, covered with cinders. This space has been used to some extent by persons walking north and south, so as to make a sort of pathway there. There is a railroad track of the defendant on each side of the space, which are the only railroad tracks in the right of way at this point. The west track is used for south bound trains and the east track for north bound trains.

There is no testimony by any eye witness other than the plaintiff, as to the manner in which he was injured, for he was the only eye witness of the occurrence. He was slightly over eight years of age when he testified. He testified that as he came from the west upon the north sidewalk of the crossing and was about to cross, he saw a passenger train standing still at the Cheltenham Station, and therefore stopped and stood still and waited before crossing, as he repeatedly puts it, until the "passenger train got by and then I ran across, and the engine of the freight train hit me and knocked me down and ran over me." Cheltenham Station is over 900 feet, or about three blocks, north of where plaintiff was. On cross-examination he stated that he "ran pretty fast" when he attempted to cross and that he did not see the freight train and did not hear any bell or whistle. He also testified that before he was struck he did not see the locomotive which struck him and that he knew nothing from the time he was struck until when he saw a little of the end of the freight train which had struck him as it reached Cheltenham. The passenger train involved was one scheduled to leave Cheltenham at 7:30 o'clock and the freight locomotive involved was one going backwards, hauling ten or twelve freight cars, and running upon no scheduled time at any

298        APPELLATE COURTS OF ILLINOIS.

Ballentine v. Illinois Central Railroad Co., 157. Ill. App. 295.

point.   The freight engineer stated he did not know whether
the freight cars were empty or loaded and it does not appear
which was the fact.

The next we learn of the plaintiff from the evidence is
that his cries were heard by one of the witnesses, Miss Dom-
mer.   When she heard the cries, she was in her bedroom in a
house which fronted north on 80th street to the east of the
right of way.   Hearing the cries, she looked out of the
window and saw plaintiff lying in the space between the two
tracks west of and just opposite her window, that is, about
25 or 30 feet south of 80th street.

From the center of 80th street, which is 60 feet wide, south
to the center of 80th court, which is a street 35 feet wide,
the distance is about 330 feet.   This makes the distance
approximately 250 feet from the place where plaintiff was
run over, according to his testimony, to the place where he
was found.   Unless there is in the record lawful justification
for legal presumption, that is, circumstantial evidence, as
to the means, manner or method whereby plaintiff reached
the place where he was found from the place where, accord-
ing to his testimony, he was run over, the record fails to
disclose how he reached the former place from the latter, for
there is no direct evidence in that regard.   None of the train
men learned of the occurrence until about six o'clock in the
afternoon of the day plaintiff was injured.   During the
morning of that day, before he was injured, snow had fallen,
but not much more than sufficient to cover the ground.   There
is evidence, undisputed, that there was a trail from drops of
blood, beginning at a point estimated as being from ten to
twelve feet north of the north sidewalk of 80th court and
running, practically, continuously, from that point to where
defendant was found.   This line of stains or drippings of
blood ran upon the west rail of the east track or within about
twelve inches thereof.

When Miss Dommer, as stated, discovered plaintiff, she
called her mother's attention to him, and Mrs. Dommer im-
mediately went to his assistance.   There was then no train
in sight.   Two other ladies, Mrs. Whitcomb and Mrs. Collis,

came up to him about the same time as Mrs. Dommer. When Mrs. Dommer came to him, she asked him what the matter was, and he replied that a train had run over his foot and then asked her to take him to his home. Plaintiff's home was then at 285 81st street, which was the second house west of the right of way, fronting south. Mrs. Dommer picked him up, held him, as she indicated, in her arms, with his head upon her left arm toward the east and carried him south in the space between the tracks, without his leg or foot being in anywise bound up, until she came near 80th court where they were met by a Mr. Pearson. Pearson then took plaintiff and carried him to his home. Pearson testified to seeing the blood stains referred to, which led to a large pool of blood where plaintiff was found by Mrs. Dommer. He also testified to an appearance in the snow, as if something had dragged along beside the track, where the blood stains were. His description indicates the dragging of a garment or of part of a garment rather than the body or any portion of the body of a human being. It can be reasonably inferred from the evidence, if it be assumed that plaintiff was struck at the 80th court crossing by the freight locomotive, that he was carried by the locomotive to where Mrs. Dommer found him. But it is entirely a matter of conjecture whether he was caught upon some place or projection upon the locomotive, as, for instance, a step such as is found upon the ends of some locomotives, or, in the exercise of the instinct of self-preservation, he caught hold of and clung to some such place or projection until he could hold on no longer. Neither party has furnished any evidence as to the physical condition of the back end of the locomotive, which ran backward, in respect to the existence of any place or projection whereon he may have been caught or which he may have caught hold of. Upon the evidence of this record, it does not appear that it was impossible that plaintiff was carried by the locomotive. The trail of blood rather indicates that he was. It may reasonably be inferred that while carried he was not fully conscious. The evidence does not totally exclude the possibility of his having sustained some bruise or contusion upon

his person when struck, but there is no evidence of any serious bruise or contusion other than the injury to his leg. That plaintiff should have been struck and carried the distance stated without other serious bruise or contusion is a remarkable occurrence, but not "miraculous" as defendant argumentatively characterized it. Plaintiff's statement that when struck he was *knocked down* may be regarded as an inaccurate description by him, a boy, of the result of his being struck.

The theory of plaintiff's case is that by the passing of the trains (the passenger train going south and the freight train going north), meeting, in the manner stated, at the crossing, a condition somewhat more than ordinarily dangerous to a person crossing the tracks was created by the defendant at the crossing of the railway and the public highway at 80th court; that under such circumstances ordinary care required the exercise of greater caution than otherwise both on the part of the railroad company and a person crossing in order that the person crossing should not be injured; that defendant was negligently (and also contrary to statutory enactment and municipal ordinances) running the freight train, without ringing any bell or sounding any whistle; that defendant was running the freight train at a negligent rate of speed, the circumstances then present being considered; and that defendant ran the freight train at a rate of speed prohibited by statute and by ordinance. In view of the plaintiff's age we may not find him to have contributed to his injury by negligence. The only question, upon the facts, then is: Was the jury justified in arriving at the conclusion that the defendant was negligent?; or, in an appeal by a defendant from a judgment in favor of the plaintiff, perhaps more accurately stated: Was it shown, by a preponderance of the evidence, that the defendant was negligent? In such case as this the duty of this court is not, as appellant puts it, "to review the testimony and determine upon which side is the greater weight of the evidence," but it is to review the evidence and determine whether plaintiff has established his case by a preponderance of the evidence. That is the duty of

this court when errors have been assigned which require us to weigh the evidence, where the judgment appealed from is in favor of the plaintiff.

It is, unquestionably, possible in point of law, that at the crossing of a railroad and a public highway the railroad company can create such a situation or condition or such circumstances, by its trains, the placing of its cars, or otherwise, that the speed of a train passing over the crossing, although not so great as to be prohibited by statute or ordinance, may yet be an act of negligence. Whether in this particular instance there be such common law negligence, was a question wholly for the jury, provided the facts shown tended to prove such negligence. Besides other questions of negligence on the part of defendant in the case at bar, there is a question of such negligence. We think that there is sufficient evidence in the record, tending to show such negligence, to entitle the plaintiff to have the jury pass thereupon. There is, furthermore, evidence that the freight train had no bell ringing or whistle sounding in passing over the crossing and that it ran over the crossing at a higher rate of speed than permissible under the law.

The evidence is, as between the parties, irreconcilably in conflict in respect to all these questions; and, indeed, the evidence of neither of the parties is at all times consistent with itself. Questions as to the veracity of witnesses arise frequently; and very often questions arise as to the knowledge and opportunity of observation, by particular witnesses, as to that concerning which they have testified. The correctness of the testimony of some of the witnesses in regard to whether one or the other of the two mentioned trains was crossing 80th court at a particular moment of time, depends either upon whether the passenger train left Cheltenham Station on time or whether another train left South Chicago on time, that is, upon something or other than the direct knowledge or observation of time and the occurrence by the testifying witnesses. This last mentioned weakness in the testimony is mainly, if not entirely, in the evidence of the defense. But the evidence on behalf of the plaintiff is not

302        APPELLATE COURTS OF ILLINOIS.

Ballentine v. Illinois Central Railroad Co., 157 Ill. App. 295.

without weakness in some instances. A principal question in the case for our determination is the question whether the plaintiff, in his own testimony, truthfully presented the manner in which he was injured. While he is not directly contradicted by any of the train crew the very circumstance that at a crossing none of the several members of the train crew on the freight train, including the engineer, fireman, and switchman, who were necessarily more or less on the look out observed him is itself remarkable. According to the evidence the locomotive engineer was himself on the look out on the west side of the locomotive—the side which must have struck plaintiff. The plaintiff frequently failed to answer questions asked of him and which, his age being considered, it appears he should have answered. His failure to answer some of the questions asked does not leave the best impression.

We have, however, carefully examined and weighed the evidence and cannot say that the plaintiff has not established, by a preponderance of evidence, one or more of the charges of negligence.

The engineer upon the freight train, who called at the hospital and saw the plaintiff the day after the accident, testified that, in passing north in his locomotive the morning plaintiff was injured, he saw and spoke to the plaintiff at a point 75 or 100 feet north of the 80th court crossing. This evidence tends to totally destroy plaintiff's theory of the manner of his injury. In view of all the other evidence we are, however, inclined to believe the engineer mistaken in regard to the identity of the boy he saw. He had but slight opportunity of observing the boy he did see and, when the evidence is considered altogether, we think there is room for the conclusion the jury arrived at in this respect, as indicated by the verdict.

It appears as facts not in dispute that the plaintiff's father, an employe of the Illinois Steel Company who worked nights, returned home from work at about 7:30 o'clock on the morning plaintiff was injured. When the father reached home, plaintiff asked if he might go and get the morning paper.

The father assented to this request and gave plaintiff the necessary money. Other mornings plaintiff had gone for the paper and he had always gone to a store kept by a Mrs. Dowling. Her store was north and east of Cheltenham Station. Defendant contends that it was entitled to a peremptory instruction, directing the jury to return a verdict in its favor upon this undisputed evidence. This contention, it is argued, is made because, as a matter of law, it appears that the proximate, efficient and producing cause of plaintiff's injury, and more, the *sole* cause of plaintiff's being injured, was the negligence of the father in sending a child, so young as to be incapable of caring for himself, into a place of known danger, and, further, it is argued, this is not a case of mere passive omission to keep an immature child constantly under supervision, on the part of the parents, but one where the child was sent upon the father's errand and, in effect, sent or directed into the danger whereby he was injured. It is contended that this was a breach of the duty, owing from a parent to an immature child, not to send him into danger, and that this breach of duty was the proximate cause of the injury.

Defendant does not seek to impute to the plaintiff negligence of one of the parents, which the law of Illinois would not permit (Chicago City Railway Company v. Wilcox, 138 Ill. 370), but endeavors to show that negligence of another than the defendant, namely the parent, was the proximate and efficient cause of plaintiff's injury. In this connection defendant's counsel, after asserting that there can be no doubt but that on the part of the plaintiff's parents it was a breach of the duty they owed the plaintiff to send him upon "the railroad premises," further assert, "nor can there be any doubt that the negligence of these parents contributed to the child's injuries." We fail, however, to see any merit or any argument in the slightest degree favorable to defendant in either of these assertions. The place where plaintiff was injured was a street crossing—public highway—and not the *railroad's premises*. If there was negligence on the part of the parents in the respect argued, such negligence only con-

304     APPELLATE COURTS OF ILLINOIS.

Ballentine v. Illinois Central Railroad Co., 157 Ill. App. 295.

tributed to the negligence of the defendant in causing the injury. Had the negligence of the defendant not intervened, there would have been no injury. If, then, the parent's negligence *contributed* and concurrently, together with defendant's negligence, caused the injury the plaintiff received while upon the highway and while crossing the railroad's right of way, such contributing and concurring negligence is not a defense which can be interposed by the present defendant, which, in such case, would be a joint tort feasor. Unless the condition of this record is such that the jury would have been justified in exonerating the defendant on the ground that negligence by the parents, or one of them, was the sole proximate cause of plaintiff's injury, that is, that plaintiff was injured without intervening or concurring negligence by the defendant, it is immaterial, so far as defendant is concerned, whether or not one or both of the parents were negligent. We have already expressed our view to be that upon the evidence in this record we do not feel justified in disaffirming the conclusion, arrived at by the jury and the trial judge, that negligence of the defendant occasioned the injury to the plaintiff. It is clear that there was not any negligence on the part of the parents, or either of them, in causal proximity closer to the injury than the negligence of the defendant. It having been determined that there was such negligence by the defendant, the possibility that the parent's negligence was the sole *efficient* cause of the injury, a further contention by defendant, is eliminated from the case. This being so there was no error in giving plaintiff's second instruction, which is as follows:

"The question whether the parents of the plaintiff used care or not for the plaintiff's safety is not involved in this case. It is entirely immaterial what care the plaintiff's parents used or did not use in that respect, and that question should not be considered by the jury."

This instruction was a proper instruction in the case, so long as the evidence was such as to justify a conclusion that the defendant's negligence was either the sole producing cause of the injury or that it was a contributing proximate

cause thereof. The fact that the defendant "made claim" that the sole cause of the injuries sued for was negligence of some one other than the defendant is immaterial. There is, in this record, no evidence tending to show that negligence of the parents was the sole proximate or efficient cause of the injury. The giving or refusal of an instruction is determined not alone by the claim made by a party or the theory advanced, but by the state of the evidence in respect to the claim made or theory advanced, as well. In the case at bar the giving of this instruction was proper, although the plaintiff's parents were joint tort feasors with the defendant. Whether or not they were, it is unnecessary for us to decide and that question we do not decide.

Appellant complains of the giving of instructions numbered three, four and five, which were given at plaintiff's request. The complaint is not that the instructions lay down any erroneous principle of substantive law, but that they instruct relative to "plaintiff's case" and "his case" without in anywise defining what is meant or referred to in the use of these terms; that they use vaguely, so as to leave indefinite what is to be proven, the expression "the occurrence sought to be proved;" and that they fail so to limit the jury as to require it to base a verdict upon negligence which is charged in the declaration. Were these instructions defective in the respects complained of, these defects would be cured by various of the instructions given by the court at the request of the defendant, particularly those numbered eighteen, nineteen, twenty-one, twenty-three and twenty-seven. The instructions must all be considered together and as all having been given by the court. In complaining of these three instructions, appellant isolates them from all the other given instructions.

We find no reversible error in the giving of instruction numbered eight, which is also complained of.

Appellant complains of the giving of the instruction numbered twelve. The instruction relates to the measure of damages, if defendant is found to be guilty. The complaint is that it is too broad and comprehensive in that it authorizes

306        Appellate Courts of Illinois.

Ballentine v. Illinois Central Railroad Co., ·157 Ill. App. 295.

the jury to assess damages at a sum which will be a fair and just compensation for the injuries sustained. The argument is that, in view of the fact that plaintiff is a minor, he is not the one who is entitled to all the compensation for the injuries. In so far as his earning capacity until he attained his majority was injured or diminished by the injury he sustained, plaintiff's father, and, in case of his death, the mother, was entitled to the proceeds of that earning capacity, and hence, whatever damage the injury occasioned in that respect the plaintiff was not entitled to compensation therefor. In other words, the proposition advanced by defendant is that when a minor has sustained injury and some one is at fault, as here, two suits must be brought in order to recover the full extent of the damages caused by the injury to the minor, that is, one by the father for the injury to the minor's earning capacity until he has attained his majority and another by the minor for the other damages sustained. The proposition is sustained by Western Union Telegraph Co. v. Woods, 88 Ill. App. 375; Chicago City Ry. Co. v. Schaefer, 121 Ill. App. 335, and Richardson v. Nelson, 221 Ill. 254, cited by appellant. In the case at bar, however, the father of plaintiff prosecutes the suit as next friend of the plaintiff and the mother of plaintiff aids in the prosecution thereof as a witness for and on behalf of plaintiff. The father and mother thus both aided in the prosecution of the suit upon the theory whereupon it was prosecuted, namely, that, whatever the damage which was sustained by reason of the injury of plaintiff, it should be recovered by the plaintiff. Under the principle of American Car & Foundry Company v. Hill, 226 Ill. 227, the father and mother of plaintiff herein thereby estopped themselves from hereafter recovering damages from appellant on the ground that plaintiff's earning capacity until he attained his majority was diminished by the injury he sustained. The law of *res adjudicata* as established and applied in this state is in complete accord and harmony with this principle of the case of American Car & Foundry Company v. Hill. Lightcap v. Bradley, 186 Ill. 510, 530.

We find no reason for disturbing the judgment of the Superior Court. The judgment will be affirmed.

*Affirmed.*