EDWARD B. KELLY vs. WAKEFIELD AND STONEHAM STREET
RAILWAY COMPANY.

Middlesex.    January 16, 17, 1901. — October 17, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Negligence*, In driving, Contributory.

In an action against a street railway company for injuries caused by the plaintiff
being run into by a car of the defendant, it appeared by the plaintiff's evidence,
that the plaintiff was driving in an open wagon approaching a street along
which the defendant's tracks ran; that when eighty feet distant from the tracks
he had a clear view of the tracks for a distance of from three hundred to three
hundred and fifty feet from the corner he was approaching; that he looked in
both directions and no car was in sight; that from this point until his horse
was actually upon the track his view was so obstructed by trees that he could
not see a car coming from the right; that when on the track he saw a car ten
or twelve feet away coming from the right at the rate of from ten to sixteen
miles an hour; that the horse turned or was turned by the plaintiff to the left
and was struck on his hind quarters by the car and the plaintiff thrown out and
injured; that the plaintiff drove over the eighty feet intervening between his
view of the tracks and the point of collision at the rate of from four to five
miles an hour, which was the usual rate of speed of the defendant's cars at this
place; that while so driving the plaintiff listened but heard no gong and no
noise indicating the approach of a car; that it was shortly after seven o'clock
on the evening of November 24, and a light snow was falling with a little rain.
*Held*, that there was evidence to go to the jury that the plaintiff was in the
exercise of due care; that it might have been more prudent, to drive over the
eighty feet where the plaintiff's view to the right was obstructed at the usual
rate of speed of the defendant's cars at that point, than to have driven more
slowly and thus have given a car which was more than three hundred feet away
when the plaintiff saw the tracks more time to get to the crossing, and the court
could not say as a matter of law that the plaintiff should have got down from
his wagon, gone forward in advance of his horse and looked to see whether a
car was coming before driving on to the crossing.

TORT for injuries caused by the plaintiff, who was driving in
an open grocery wagon from Richardson Street into Main Street
in Wakefield, being run into by an electric car of the defendant
running at a high rate of speed southerly along Main Street
across the end of Richardson Street.    Writ dated March 15,
1898.

At the first trial of this case before *Hardy*, J., the plaintiff got
a verdict, and the defendant's exceptions were sustained by this
court in a decision reported in 175 Mass. 331.    At the new

trial in the Superior Court, before *Gaskill*, J., the evidence differed in various ways from that presented at the first trial, as explained in the opinion of the court. At the close of the evidence, the jury by direction of the judge returned a verdict for the defendant; and the plaintiff alleged exceptions.

At the time of the former decision reported in 175 Mass. the justices were misled as to the directions of the streets by the plan then before them, which had no points of the compass marked upon it. The following is a reduced copy of the correct plan which was used at the argument of the present exceptions

and is referred to in the opinion. The flagman's house mentioned in the opinion is on the westerly side of the tracks of the Boston and Maine Railroad where they cross Richardson Street and is marked on the plan " Crossing Tender House." The armory and the trees are also marked on the plan. Most of the trees were pines.

*J. B. Moran*, (*A. D. Moran* with him,) for the plaintiff.

*S. J. Elder*, for the defendant.

LORING, J. The only question argued in this case is whether there was evidence that the plaintiff was in the exercise of due care.

The plaintiff made out the following case: When he got just past the flagman's house, he looked to the north towards the armory and then to the south in the other direction to see whether a car was coming, and saw none. At this point he had a clear view of the track from the corner of Main and Richardson Streets for three hundred to three hundred and fifty feet north towards the armory. Seeing no car coming, he drove on. The flagman's house is eighty feet from the tracks of the defendant's railway, in Main Street. From that point until the forefeet of the plaintiff's horse were at the further rail of the defendant's

track and the plaintiff, sitting on the seat of his wagon, was two to four feet from the nearer rail of the track, the plaintiff's view was so obstructed by trees that he could not see a car coming from the direction of the armory. When the plaintiff got to this last point, he looked back and saw the car ten or twelve feet away coming towards him from the armory at the rate of ten to sixteen miles an hour; the plaintiff's horse turned to the left, or was turned to the left by the plaintiff (that is to say, away from the car), was struck on his hind quarters, and the plaintiff was thrown out and suffered the injuries here complained of. The plaintiff testified that while driving from the flagman's house to the corner of Main and Richardson Streets, he listened, but heard no gong, no buzzing of electricity, no rattle of the car, nor any noise indicating its approach; that the wagon in which he was driving made no noise, and that there was nothing which would prevent his attention being attracted by the noise of a car coming from the direction of the armory. The collision took place about five minutes after seven o'clock on the evening of the 24th day of November. There was a light snow falling together with a little rain, but not enough to interfere with a person who was standing at the flagman's house seeing a car coming from the direction of the armory.

We cannot say that the effect of the trees on Richardson Street, or the trees on Main Street, or a combination of the trees on both streets, was not such as the plaintiff testified to; neither can we say, of our own knowledge, that if the gong was not sounded, the plaintiff, under the conditions existing on the night in question, must have heard the buzzing of the electricity or the rattle of the car, if he had listened. If the plaintiff looked when he was eighty feet away and could not see a car coming from the direction in question until he was personally within two or three feet of the nearer rail of the track, we cannot say, as a matter of law, that he was guilty of contributory negligence in driving on over the intervening eighty feet at the usual rate of speed of the defendant's cars at this point, listening to hear if a car was coming and looking for a car the first moment when it was possible for him to see one. It is difficult for a traveller to know how to act at a crossing such as this

crossing was stated to be in the plaintiff's evidence. If it is true that the plaintiff could not see the defendant's tracks while driving over the eighty intervening feet of Richardson Street, and that the first sight of the tracks that he could obtain after leaving the flagman's house was when his seat on the wagon was only two to four feet from the nearer rail, there is room for thinking that it would be safer to drive at the usual rate of the defendant's cars at this place than at a slower rate; having ascertained that no car was within three hundred or three hundred and fifty feet of the crossing, it may be that it was more prudent for him to drive at the usual speed of the defendant's cars (which was testified to be four to five miles an hour), when he had only eighty feet to go in order to get to the crossing, and from ninety to ninety-five feet to go in order to get clear of it, rather than to have driven at a slower rate and thereby to have given to a car, which was more than three hundred to three hundred and fifty feet away when he was at the flagman's house, more time to get to the crossing by the time he got there. Neither can we say, as a matter of law, that the plaintiff should have got down from his wagon, gone forward in advance of his horse, and looked to see if a car was coming before driving on to the crossing.

On the whole, we are of opinion that it was a question for the jury to decide whether the condition of things at this place was that disclosed by the evidence of the plaintiff, and, if it was, whether the plaintiff exercised due care. See in this connection *Hicks* v. *New York, New Haven, & Hartford Railroad,* 164 Mass. 424; *Tilton* v. *Boston & Albany Railroad,* 169 Mass. 253.

The case presented by this bill of exceptions is altogether different from the case considered by us when this action was here before. *Kelly* v. *Wakefield & Stoneham Street Railway,* 175 Mass. 331. The plan of the premises now presented has the points of the compass on it, and it appears that Main Street runs north and south and Richardson Street east and west. We understood before that a person at the flagman's house was prevented by the trees from seeing a car for two thirds of the distance from the corner of Main and Richardson Streets to the armory going north from the corner, and could see a car for the remaining one third of that distance. It now appears that a car can be seen for two thirds of

the distance from the corner going north to the armory, and cannot be seen for the remaining third of the distance between the corner and the armory. The distance from the corner to the armory is about five hundred and thirty feet. In addition, when the case was heard before there was no evidence that the plaintiff knew the usual rate of speed of the defendant's cars between the armory and the corner, and no evidence that he listened as he drove on for the buzzing of electricity or the rattle of the car, or any other noise indicating the approach of a car, nor as to whether the wagon which he was driving made a noise which would interfere with his hearing the approach of a car. And at this trial there was evidence from which the jury could have found that after leaving the flagman's house the plaintiff could not see a car coming from the armory until he personally was within two feet of the easterly rail of the track, in place of his horse being within two feet of that rail, as was stated to be the case before; in addition, there were some differences in the testimony, which have already sufficiently appeared.

*Exceptions sustained.*