## Lake Street El. R. R. Co. v. Rose R. Gormley.

1. VERDICT—*When to be Directed for Defendant.*—Where the facts in a case are undisputed and of such a character that reasonable minds would agree without dissent that the injury was caused by the plaintiff's contributory negligence, and there is no evidence upon which the jury could, in the eye of the law, reasonably find otherwise, a verdict should be directed for the defendant.

2. CARRIERS OF PASSENGERS—*Party After Leaving the Carrier's Premises is No Longer in Its Charge as a Passenger.*—After a party has left the station platform of a railroad and has proceeded along the sidewalk of a public street, he is no longer in the carrier's charge as a passenger.

3. NEGLIGENCE—*Where a Question of Law.*—Where a party is so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent, the court may so pronounce it as a matter of law by instructions to the jury.

4. SAME—*Failure to Look is Not, in Law, Negligence Per Se.*—While a failure to look as a train is approaching is not in law negligence *per se,* it is negligence in fact if there are no conditions or circumstances which excuse looking.

5. DAMAGES—*Marring of Personal 'Appearance and Humiliation Resulting Therefrom, Are Not Elements for Computation Of.*—The marring of personal appearance and humiliation resulting from contemplation of bodily disfigurement are not elements entering into the computation of pecuniary damages for personal injuries sustained by reason of alleged negligence.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902. Reversed and remanded. Opinion filed May 19, 1903.

Appellee sued to recover damages for personal injuries. The night of September 23, 1899, she took one of appellant's west-bound trains at the elevated station near Fifty-second street. At or near that point appellant's west-bound trains descend upon an incline from the elevated structure to the street surface, and are then operated by an over-head electric trolley-wire. The tracks are double, west-bound trains using the north of the two tracks, and east-bound trains the south track. At Austin avenue appellant has a station standing between its double tracks.

The station platform is parallel with the tracks and about
four feet above the level of the ground. Appellee left
the car at this station about nine o'clock at night. She
walked a short distance to the west end of the platform,
and descended the five steps leading to the sidewalk on
Austin avenue. That avenue crosses appellant's tracks at
right angles at that point. At the bottom of the steps she
turned to the left on the sidewalk intending to cross the
east-bound or south track. The north rail of this track
was three feet south of the south side of the steps. Her
account is as follows :

" As I stepped off the corner of the step on the sidewalk
I turned south facing toward my home. I did not make
any pause at all. Immediately upon turning my face to
the south I took a step directly south toward my home.
I could not say how many steps I took. It is about two
steps from the southwest corner of the steps leading into
Austin avenue to the railroad. I remember taking one
step and something struck me as I had taken that step. I
could not say whether I had got on the railroad track
when I was struck. It was dark. I could not see. My
recollection is that I had taken the one step. Something,
whatever it was, hit me—struck me a little to the right of
the front of my body and face, on the right side in front
of the shoulder. I could not say what was struck. I
didn't know what took place at the station after I was
struck. I knew that the trains of the elevated railroad
were liable to come along and pass that station going east
at any minute. I did not hear any noise of any kind; I
didn't hear the noise of the train running along the track.
I did not hear any signals or noises of any kind when the
two trains met each other west of the station a little ways.
My mind was not absorbed with the fact that I was getting
home. I was not hurrying. I knew the train struck me.
I did not see the train, didn't even catch a glimpse of it.
When I looked up the train struck me. I did not look up
to see the train before it struck me."

Appellee was thrown under the station platform and
injured.

It is conceded that the headlight on the car which
struck appellee was not then burning. It had gone out
about the time the train left its western terminus. There

is evidence tending to show that a lantern was hung in front of the car, and the train itself was lighted. The view westward from the station platform was unobstructed by buildings, except that a small building, called a lavatory, five feet six inches wide and ten feet high, stood between the tracks on the west side of Austin avenue and about eighty feet from where appellee was struck. Whether this would intercept the view along the tracks to the westward of one standing on the station platform or steps would depend upon the position of the observer. There is testimony not contradicted, tending to show that one standing on the lower of the steps down which appellee went just before she was struck, could see westward along the east-bound tracks some two or three hundred feet; and that, standing on the sidewalk three feet north of the north rail, which was within about a foot of where appellee was when struck, the view was unobstructed along the track so that a train could be seen as far away as the next station west of that at Austin avenue. There is testimony given by one of appellee's witnesses tending to show that the whistle had sounded when the train was about a block from the crosswalk, and that the bell was ringing just before the emergency brakes were put on when the train was on the east side of Austin avenue. Another of her witnesses states that no signals were given, and a third that she did not observe whether they were or not.

CLARENCE A. KNIGHT and WILLIAM G. ADAMS, attorneys for appellant.

BULKLEY, GRAY & MORE, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is urged by appellant's attorneys that in view of the undisputed facts the court erred in refusing to direct the jury, as requested by appellant, to return a verdict of not guilty, because, as it is claimed, the injury resulted from contributory negligence. L. S. & M. S. Ry. Co. v. Hessions, 150 Ill. 546. If the facts are undisputed, and of such

a character that reasonable minds would agree without dissent that the injury was caused by appellee's contributory negligence, and there is no evidence upon which the jury could, in the eye of the law, reasonably find otherwise, then the instruction should have been given. Martin v. C. & N. W. Ry. Co., 194 Ill. 138; C. C. Ry. Co. v. Canevin, 72 Ill. App. 81; Lamson v. I. T. & Sav. Bk., 166 Ill. 162; Wabash Ry. Co. v. Brown, 152 Ill. 488; Landgraf v. Kuh, 188 Ill. 484.

It is stated by appellee's attorney that although there was a count in the declaration alleging that plaintiff was, when injured, still a passenger, yet that " the case did not go to the jury upon any such theory," and that no such claim is now made. Appellee had left the station platform and was proceeding southward on the sidewalk apparently on the public street, when she was struck by the train approaching from the west. So far as appears, therefore, she had left appellant's premises and was no longer in its charge as a passenger. C. & E. I. R. R. Co. v. Jennings, 190 Ill. 478; C. & N. W. Ry. Co. v. Weeks, 99 Ill. App. 518–523.

Was the accident caused in whole or in part by appellee's contributory negligence? According to her own testimony appellee was struck, not on her side, but in front, and a little to the right of her body and face. She seems to have been walking with her face turned partly toward the approaching car, against the projecting corner of which she thrust herself. The train did not steal upon her from behind. Yet she neither looked nor listened even an instant before placing herself in a position of danger. There is no reason apparent in the evidence to suppose that she could not have seen the train had she lifted her eyes, or have heard it had she directed her attention to the ever possible danger at such a crossing. Her attorneys seem to concede this, when they argue that the view to the west was obstructed by a lavatory eighty feet away across Austin avenue. But she did not look in that direction at all after she left the top of the platform, and the lavatory could

not have obstructed her view of the train after the latter had passed it. She states that she " did not look up." She " did not see the train, didn't even catch a glimpse of it," before it struck her. She was thoroughly familiar with the surroundings there, and was accustomed to ride on trains leaving and arriving at that station. She had lived for eight years in that locality. She could sit on her front porch and see the trains and the crossing at Austin avenue where she was injured. She was familiar with the way the railroad ran its trains. Here, then, was perfect knowledge of all the conditions; and yet appellee, in apparent forget-fulness, walked into or against a moving train, which she knew might come at any moment, without any effort to look out for its approach. These are undisputed facts, and show, we think, that appellee was so clearly and palpably negligent that all reasonable minds would so pronounce it without hesitation or dissent. In such cases the court may so pronounce it as a matter of law by instructions to the jury. Hoehn v. C., P. & St. L. Ry. Co., 152 Ill. 223–229. In Ill. Cent. R. R. Co. v. Batson, 81 Ill. App. 142–153, after citing a number of cases, it is said: " These authorities, and many others that might be cited, warrant the state-ment that while a failure to look as a train is approaching is not in law negligence *per se*, it is negligence in fact, if there are no conditions or circumstances which excuse looking. And a jury without evidence of conditions or circumstances which excuse looking, when looking would disclose the danger, is not warranted in finding that such failure to look is not negligence."

The traveler, however, " may not be in fault in failing to look or listen, if misled without his fault, or the view may be obstructed by objects or by darkness, and other and louder noises may interfere with his hearing." C. & N. W. Ry. Co. v. Hansen, 166 Ill. 623–628; C. & A. R. R. Co. v. Pearson, 184 Ill. 386–391. Is there evidence in this case which tends to show that appellee was or may have been thus misled, and which should have been submitted to the jury? A railroad crossing is always a place of possible

danger. Appellee does not claim to have been ignorant of
the conditions. She tells her story frankly and without
hesitation. She does not, so far as we can ascertain from
the evidence, claim to have been misled. It is urged, how-
ever, by her attorneys, that the view of the track to the
west was obstructed. But we are provided with photo-
graphs by both parties which tend to show that before
reaching the bottom of the steps appellee had a view of the
track for at least a hundred and fifty feet to the west.

It is said the night was dark, and there is evidence that
the sidewalk at the crossing was not lighted. It was not,
however, entirely dark. There were lights not far away
on the platform and on the street. Appellee does not
claim to have had difficulty in seeing her way. The absence
of a brilliant light at the crossing might make it easier
instead of more difficult to see the electric lights of the
approaching train, had she looked at all, when descending
the steps or stepping toward the track. If the view was
obstructed by the lavatory when she was on the platform
then it was her duty to look as soon as she reached a point
where it was unobstructed. 2 Thompson on Negligence
(2 Ed.), Sec. 1442; Kelly v. Wakefield, 179 Mass. 542. The
darkness of the night was an additional reason for exercis-
ing care to look and listen at a railroad crossing. In the
case last above cited it is said : " But the conclusive reason
for holding that plaintiff was guilty of contributory negli-
gence is that, knowing he could not see a car which was
behind the trees  *  *  *  he did not take any pains to
see that such a car had gone by before he drove onto the
crossing, or so near it that some accident was inevitable."

There was absence of a headlight. Waiving the question
as to whether this was negligence on the part of appellant,
it is difficult to see how this fact would excuse appellee's
failure to look before stepping on the track in the direction
in which a train might be expected to come. As she passed
down from the platform she was looking at the steps, but
did not look west along the tracks. She saw and heard
nothing. Others saw the lights of the train. One of

appellee's witnesses saw the light of the east-bound car half a mile away. Another of appellee's witnesses states that the cars were lit up. There was a lantern hanging on the front of the train. It is possible a strong headlight might have attracted appellee's attention. But its absence does not excuse her failure to exercise due care herself.

There is evidence by one of appellee's witnesses that there were "a good many toots of the whistle" about a block before the train reached the west side of Austin avenue, and that the bell was ringing when the emergency brakes were put on. This is denied by another of her witnesses, and a third did not observe and does not know. The absence of signals is not, therefore, shown by a preponderance even of appellee's evidence, and that signals were given is affirmatively shown by overwhelming testimony of appellant's witnesses. Appellee testifies: "I did not hear any noise of any kind; I didn't hear the noise of the train running along the track. I do not remember of the train of cars making any noise, that left the station about the time I was leaving it. I did not hear any signals or noises of any kind when the two trains met each other west of the station a little ways." This testimony indicates that her thoughts were absorbed, so that the noise even of the departing train she had just left made no impression on her mind, and if so, her failure to hear the approaching train is not satisfactory evidence that the signals were not given. It rather tends to show that she was not misled, and so failed to look and listen, because of the alleged absence of signals.

There is evidence introduced by appellee's counsel tending to show that the speed of the train was at the rate of at least twelve miles an hour. It does not appear that this rate of speed was unusual, nor that it was negligent. Whether the train was going at six miles an hour, as appellant's witnesses claim, or twelve miles an hour, as estimated by witnesses for appellee, it must have been near at hand before appellee had descended the steps leading from the platform.

At twelve miles an hour the train would move, it is said,

seventeen feet a second, and would travel eighty feet in a little over four seconds. At the rate of three miles an hour, or about four feet in a second, appellee would have traveled more than sixteen feet after the train was in full sight across the street. Even if she was walking at a still slower rate, she was yet approaching the track without an effort to ascertain whether there was danger, and was actually about to put her foot upon the rails when she was struck without knowing what hit her. If the night was dark or misty, there was the greater need of caution in approaching a railroad crossing. She knew there was no flagman at that point, and no gates. It is obvious that not to look or listen when at the bottom of the steps before approaching the track was a lack of ordinary care on appellee's part, which was the direct cause of the injury. We are of opinion that the undisputed facts fail to relieve appellee of the duty of looking and listening, or excuse her failure so to do.

Objections are made to certain instructions, some of which we regard as well founded. The third instruction, which refers to "negligence of the defendant as charged in the declaration, or either of the counts thereof," is certainly not to be commended, especially in view of the fact that there were counts in the declaration to which a demurrer had been sustained, and also a count which alleged the plaintiff was a passenger toward whom the highest degree of care was due from appellant. See, Ill. C. R. R. Co. v. King, 179 Ill. 91. The instruction is, we think, faulty in that it fails to include essential elements necessary to sustain a verdict. Passing over other instructions complained of, the alleged defects of which will probably be remedied upon another trial, we are of opinion that appellant's objections to appellee's seventh instruction are well founded. In that instruction the jury are told that they may take into consideration " to what extent, if any, she had been injured or marred in her personal appearance and to what extent she may have endured physical suffering as a natural and inevitable result of such injuries," etc. The marring of personal appearance and humiliation resulting from con-

templation of bodily disfigurement are not elements entering into the computation of pecuniary damages for personal injuries sustained by reason of alleged negligence.  C. & G. T. Ry. Co. v. Spurney, 69 Ill. App. 549–552, and cases there cited.  Chicago City Ry. Co. v. Canevin, 72 Ill. App. 81–88.

The judgment of the Circuit Court must be reversed and the cause remanded.