## Chicago City Railway Company v. John Schaefer, by next friend.

### Gen. No. 12,007.

1. JUDGMENT—*when unit.* A judgment in tort is a unit and must be either reversed or affirmed as such.

2. DEPOSITION—*when re-transmission of, to commissioner, ground for suppression of.* A motion to suppress depositions should be granted where it appears that the court ordered and allowed one of the parties, over the objection of another, to withdraw such depositions, already opened and filed, and send them by private communication to the commissioner who took them, for amendment.

3. DEPOSITIONS—*when alterations in, ground for suppression of.* Where the language used by the witness is changed by the commissioner after it has been subscribed and sworn to, a motion to suppress should be granted.

4. CROSS-EXAMINATION—*when, proper, as bearing upon credibility of witness.* Any questions on cross-examination seeking to show the relation between the witness and the party calling him, are, on general principles, competent as affecting credibility.

5. CROSS-EXAMINATION—*latitude to be allowed upon, as to movements of plaintiff at and prior to his injury.* Cross-examination upon such subject should not be limited by the court to the precise time of the accident, but should be allowed as to a reasonable time preceding.

6. MEASURE OF DAMAGE—*instruction upon, held erroneous, in using phrase, "all injuries."* The use of this phrase is erroneous in that it would authorize a verdict based in part upon mental suffering and chagrin, not the direct result of physical pain, but caused by bodily defects which are the result of the accident.

7. MEASURE OF DAMAGES—*instruction upon, held erroneous in authorizing allowance to plaintiff during minority for loss of earning power.* An instruction which authorized the jury to allow to a minor plaintiff damages for loss of earning power during his minority, is erroneous; such damages, if sustained, can only be recovered by the parent of such a plaintiff.

Chicago City Ry. Co. v. Schaefer.

8. Passenger—*when instruction erroneous in assuming relation of*. An instruction which assumes that the plaintiff was in the care of the company, because he was a passenger, is erroneous, where it was a distinct defense interposed on the trial that the plaintiff had assumed the risk of accident from his exposed position, by unnecessarily refusing to abandon it at the request of the defendant's agent.

9. Passenger—*when assumes risk*. A passenger who rides on the foot-board outside of a car, when it is reasonably practicable for him to take his seat within it, assumes the risk of his position.

10. Joint liability—*instruction as to, erroneous*. An instruction as follows: "The court instructs the jury that under the law and evidence of this case, they can find both defendants guilty, or both defendants not guilty, or either one of the defendants guilty and the other defendant not guilty,"—is erroneous in an action on the case for personal injuries.

11. Instruction—*what not test of impropriety of*. An instruction reasonably capable of an interpretation which would materially mislead the jury, is ground for reversal, notwithstanding the jury may have taken it in the proper sense in which it was intended.

12. Instruction—*when, upon subject of paramount rights of street car company to tracks, erroneous*. Where the paramount rights of a street car company, co-defendant in an action, for negligence, are not at issue in the cause, it is error to present them to the jury in such a way as to suggest that they are, where such presentation might operate to the prejudice of the co-defendant of such company.

13. Remarks of counsel—*when improper*. It is improper for counsel in his argument in a personal injury case to refer to the fact of the plaintiff's orphanage.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. Oscar E. Heard, Judge, presiding. Heard in this court at the October term, 1904. Reversed and remanded. Opinion filed July 3, 1905.

Reporters' Note. The rulings in this case refusing to suppress the depositions, were made by a judge other than the one presiding at the trial.

**Statement by the Court.** This appeal was consolidated for hearing with the separate appeal taken from the same judgment by Joseph Stockton Company, No. 12,030 in this court.

The judgment appealed from is for $10,000, and was rendered in the Superior Court against the Chicago City Railway Company and Joseph. Stockton Company (herein-

after called defendants) in favor of the appellee (herein-
after called plaintiff), who was a minor and sued by his
next friend. It was rendered July 9, 1904, on the verdict
of a jury in an action brought by the plaintiff, for injuries
sustained through the alleged negligence of the defendants
in respectively operating an electric car and a wagon drawn
by horses. The declaration on which the cause was tried
alleges that the plaintiff was a passenger on the car of the
defendant, The Chicago City Railway Company, and was
in the exercise of all due care and caution for his own safety,
and the defendants so negligently operated their said car
(belonging to the Railway Co.) and their wagon (belonging
to the Stockton Co.) respectively as to cause the said car
and wagon to run into and collide with each other, by reason
of which the plaintiff was crushed between the car and
wagon, dragged from the car and thrown on the ground and
badly injured, rendered blind in his left eye and otherwise
damaged. The *ad damnum* was placed at $50,000.

Each defendant pleaded the general issue to the declara-
tion.

The Chicago City Railway Company, December 26, 1902,
moved for a rule on plaintiff to file a bill of particulars,
which motion the court overruled January 17, 1903. To
this ruling the City Railway Company excepted, and it is
assigned for error here.

The Joseph Stockton Co. took the deposition of W. B.
Affleck in Philadelphia, in its own behalf, and it was opened
and filed May 2, 1904. On May 3, 1904, the Chicago
City Railway Co. moved to suppress it, for reasons in the
opinion following noted, and the motion was overruled, to
which ruling the railway company excepted. It was then
ordered by the court "that the Joseph Stockton Company
withdraw said deposition from the files and return it to the
Commissioner before whom it was taken, and that the said
Commissioner amend and correct the certificate to the said
deposition and return it herewith to the Clerk of this Court."
To this order the railway company excepted. Thereupon,
on May 3, 1904, the Joseph Stockton Company, by its at-

torneys, withdrew the deposition from the files and sent it by a private communication through the mail to the Commissioner at Philadelphia before whom it was taken. May 9th the Clerk of the Superior Court again received through the mail and opened and filed the said deposition of Affleck, which had an addition to the Commissioner's certificate and some other changes, to be noted in the opinion. The Chicago City Railway Company May 12, 1904, moved to suppress said deposition as "amended and changed and refiled." This motion the court overruled, and the City Railway Company excepted to the ruling. The motion of the City Railway Co. thus appears in the bill of exceptions relating thereto, although in other parts of the transcript of the record it is called a motion "to strike the deposition from the files." When counsel for the Joseph Stockton Company proposed to read the said deposition at the trial, The Chicago City Railway Co. objected to the reading on the grounds set forth in the motions to suppress. The court overruled the motion and the railway company excepted. Various questions and answers in the direct examination by the Stockton Company and the cross-examination by the Railway Company, contained in the deposition, were objected to and excluded on the motions of the Chicago City Railway Company and the Joseph Stockton Company, respectively, and to the exclusion in each case exception was taken by that one of the co-defendants not making the motion. The plaintiff joined in some of the objections. Some objections made by the Joseph Stockton Company to cross-interrogatories of the City Railway Company were overruled, and to this the Stockton Company excepted. The two defendants have each in their assignments of error in this court covered the rulings in regard to the Affleck deposition and its contents which they respectively complained of when made.

Various rulings on the admission and exclusion of other evidence were made by the trial court during the trial, which were excepted to by one or the other or both of the defendants, and which are covered by their respective assignments of error.

22

The jury trial began on May 26, 1904, and lasted until June 2, 1904. On June 1 the Chicago City Railway moved for a continuance of the cause on the ground of the absence of a material witness, and in support of said motion presented certain affidavits. The plaintiff and the defendant, the Joseph Stockton Company, objected to a continuance of the case and each refused to admit that the witness would have testified as set forth in one of the affidavits presented. The Court overruled the motion for a continuance, to which ruling the City Railway Company excepted. It is assigned as error.

At the close of the plaintiff's evidence the City Railway Company requested the Court to instruct the jury to find the Chicago City Railway Company not guilty, and on the request being refused, excepted to the ruling. The Stockton Company thereupon made a similar request concerning the Joseph Stockton Company, and excepted to the refusal of the court to accede thereto. These motions were respectively renewed at the conclusion of all the evidence. They were again each denied, and to this ruling as to its motion each defendant respectively excepted, and the rulings are in this court assigned for error.

Two instructions were asked by the City Railway Co. (numbered 1 and 2) before the argument of the cause to the jury was begun by counsel. These were refused, to which exception was taken by the railway company.

Some remarks in the closing address of plaintiff's counsel to the jury were objected to by counsel for the City Railway Company, and they are assigned as error.

After the arguments the court gave to the jury, at the request of the plaintiff, instructions numbered 3 and 4, to the giving of which both defendants excepted.

At the request of the defendant, the Chicago City Railway Company, the court gave to the jury twenty-seven instructions, numbered from 5 to 31 inclusive. To the giving of each of these instructions the Joseph Stockton Company excepted. At the request of the defendant, the Joseph Stockton Company, the Court gave to the jury ten

instructions, numbered from 32 to 41, inclusive. To the giving of each of these instructions the Chicago City Railway Company excepted. The refusal of instructions 1 and 2, and the giving of instructions 32 to 41, are assigned as error by the railway company, and the giving of instructions 5 to 31 by the Joseph Stockton Company, while both Railway Co. and Stockton Co. assign as error the giving of instructions 3 and 4.

Separate motions for a new trial were made by the Chicago City Railway Company and the Joseph Stockton Company, both · of which were overruled and exceptions were taken thereto by the said defendants separately and respectively. So, also, with motions in arrest of judgment. The action of the trial court in these rulings is assigned for error, respectively, by the defendants against whom they were made.

By stipulation of the parties a single bill of exceptions reciting the evidence and matters in the conduct of the trial was presented and allowed by the trial judge, it being agreed that no recital of said bill of exceptions in favor of one defendant and against the interest of the other should, merely because it is embodied in the bill of exceptions tendered by that defendant against which the recital is adverse, be construed against said defendant, but that such bill of exceptions should be considered as having the same effect as if each defendant had filed a separate bill containing all the evidence and embodying only its own exceptions.

WILLIAM J. HYNES, JAMES W. DUNCAN and C. LeROY BROWN, for appellant; MASON B. STARRING, of counsel.

JOHN J. SWENIE and M. R. HARRIS, for appellee.

F. J. CANTY and R. W. IRWIN, for Joseph Stockton Company.

MR. JUSTICE BROWN delivered the opinion of the court.

The two appeals heard together involve a thoroughly triangular contest. The appellants agree in very little, but each is entirely satisfied that if either appellant is liable,

it is the other; while the appellee, having secured a judgment against both, is confident that both are guilty.

Many alleged errors have been assigned and argued, among the most serious of which are actions of the court taken at the instance of or in accordance with the contentions of one of the co-defendants, appellants here. These could not of course be taken advantage of by the litigant at whose instance they were made, but they are, if injurious, proper subjects for complaint by the defendant whom they wrong.

As the judgment is a unit and must be either affirmed or reversed as such (Street R. R. Co. v. Morrison Co., 160 Ill., 288-295), we shall discuss in this opinion the whole case and the errors alleged by each party defendant below, and confine ourselves in rendering judgment in the other appeal to referring to this opinion for the reasons therefor.

Several of the errors alleged and argued by the Chicago City Railway Co. relate to the deposition of W. B. Affleck, which was taken in Philadelphia at the instance of the defendant, the Joseph Stockton Company, and first opened and filed May 2, 1904. Thereafter it was withdrawn from the files by the Joseph Stockton Company (leave being given it at its own instance) and forwarded to the Commissioner in Philadelphia who took it. By him it was again sent *after alteration* to the Clerk of the Superior Court and re-opened and filed, and was read at the trial by the Joseph Stockton Company over the objections of the City Railway Company. The City Railway Company, immediately after its first opening, moved to suppress the deposition for technical defects in the form of oath or certificate thereof and in the commission, and for the refusal of the witness to answer fully questions of the defendant the Chicago City Railway Company. The motion was denied. It is unnecessary to decide whether or not this was erroneously done, for the subsequent proceedings were so plainly irregular that we cannot overlook them.

In the first place we think the trial court acted irregu-

larly and erroneously in ordering or allowing one of the parties, over the objection of another, to withdraw the deposition already opened and filed and send it by private communication to the Commissioner. If there were to be any correction of the deposition in any respect, even in the certificate, we think that all the parties to the litigation whom that deposition might affect had the right to know when it was to be made and where. We have examined several cases, such as Leatherberry v. Radcliffe, 5 Cranch, 550; Conger v. Cotton, 37 Arkansas, 286; Bewley v. Ottinger, 48 Tennessee, 354; Borders v. Barber, 81 Mo., 636; Price v. Horton, 4 Texas Civ. Appeals, 526; Wallace v. Byers, 14 Texas Civil Appeals, 574, in which the certificate of the officer who took the depositions was amended by leave of court after the depositions had been first opened and published, and where a motion afterward to suppress was held rightly denied. But in some of these cases objection was held to have been waived by not being made on the application for withdrawal of the depositions for correction, and in the others the course adopted to secure the correction was very different from that followed here.

Thus in Conger v. Cotton, 37 Arkansas, 286, the officer appeared in open court and there amended his return. This was the case also in Bewley v. Ottinger, 48 Tenn., 354. In Borders v. Barber, 81 Mo., 636, the court directed the clerk of the court to return the deposition to the officer for the correction of the certificate merely by annexing a seal.

In Wallace v. Byers, 14 Texas Civil Appeals, 574, the exact course pursued is not mentioned by the court, but the learned judge says that "The amendment of these depositions was had in each instance upon due notice and with the permission of the court and with such 'regulations and safeguards' as indicate that the integrity of the answers was preserved." It would seem, therefore, that some other method of securing the object desired was there used than in the case at bar, for the phrase "regulations and safeguards" is evidently quoted from an antecedent case of the Supreme Court of Texas, Creager v. Douglass, 77 Texas,

484, where it was held that a deposition should have been suppressed which had been taken from the files once without the authority and a second time with the authority of the court, to have the certificate amended. In that case the court said: "No doubt all certificates and endorsements connected with the return of a deposition may be amended in the presence of the court upon notice to the parties interested, and we can see no sufficient reason why the court should not have the power to direct, under proper regulations and safeguards, its being done elsewhere, but it should not be done without the permission of the court.

The statute intends to secure and preserve evidence of the correctness of depositions and of their freedom from being tampered with by the observance of the regulations prescribed, and not by means of an inspection of the deposition or through *ex parte* evidence showing the same things."

The mere entry of an order allowing a party litigant to withdraw a deposition for amendment of the certificate would not seem to add any "regulation or safeguard" to the method employed in this case and found unsatisfactory.

The Supreme Court of Missouri in Borders v. Barber, *supra,* said: "This" (i. e. directing the clerk to return the deposition for correction of the certificate) "is a practice not to be too frequently indulged, and the trial court cannot be too cautious and circumspect in guarding it. But all the notary did in this case that was material was to affix his seal. All he did was formal, in no manner affecting the evidence or any valuable right of the defendant." However, in summing up it declares: "The governing principle in such cases seems to be this: If the court is satisfied that the substance of the deposition is in fact that the paper has not been tampered with in any particular to the detriment of the adverse party, it should be admitted."

Following the spirit of this remark of the learned Court in Missouri, we might be disposed to regard the amendment of the certificate by the officer in this case, although secured by an irregular and, as we think, erroneous method,

as no such controlling reason for the suppression of the deposition, as to make the refusal of its suppression reversible error. But the objection to the deposition when it was returned goes further. When the deposition was returned and opened on May 2, 1904, it was signed by W. B. Affleck, the witness. It was certified by the Commissioner that it had been so signed, and was sworn to by the witness April 28, 1904. When it was returned and opened for the second time, on May 9, 1904, it had the same signature and a certificate of the officer (amended in form) to the same effect, viz: that the witness signed and swore to the deposition on April 28, 1904. It therefore appears that any changes in the body of the deposition, in the words of the examiner or of the witness, of which several appear, must have been subsequent to the signature and oath of the witness. In the most favorable view that could be taken, they were made by the Commissioner, presumably from his recollection or from stenographic notes of the transcriber, but all this must be a hypothesis to which there is no certificate, and in any event the material matter is that language to which the witness, after it had been written out in longhand, subscribed his name and made his oath, was deliberately changed without his consent or knowledge so far as appears, after it had been, by filing and opening, published as his deposition. This cannot be passed over as a trifling or harmless irregularity without breaking down the safeguards which are so carefully put by the law around the taking and offer of depositions as primary evidence.

The changes noted and shown in the bill of exceptions are these:

Interrogatory 49 was changed from: "The place or arrangement of the platform of the freight house?" to "Describe the place or arrangement of the platform of the freight house?"

In interrogatory 75 the word "above" was changed to "upon."

Interrogatory 85 with its answer was originally this:

Q. "Was this question put to you*on that occasion, do you recollect: 'That that side of the car all the way through, that the east end, the seats all the way through the car were occupied', and to that question did you answer, 'I am not certain of it?' "

A. "I have no recollection of making that answer to that question."

The question was changed to read as follows:

Q. "Was this question put to you on· that occasion: 'Don't you recollect that that side of the car all the way through, that the east end of the seats all the way through the car were occupied?' and to that question did you answer, 'I am not certain of it'?' "

In Interrogatory 99 the word "head" was changed to "height."

Before interrogatory 110 was asked, the witness had stated that he had "leaned out of the car, when he saw there was going to be a collision."

Interrogatory 110 and its answer stood originally thus:

Q. "Did you continue to lean out until the time of the vehicles coming together?"

A. "As they came together *I jumped off,* I did just as they came together." The answer was changed to:

A. "As they came together *I ducked in,* I did just as they came together."

In interrogatory 142 the word "Did" was changed to "Do."

It may well be said that these changes, with the exception of the answer to interrogatory 110, could not have been "to the detriment of the adverse party", and that even this alteration, changing the meaning so entirely as it does, can not be shown to have had a material bearing on the case in any way. But this is hardly satisfactory reasoning. Neither in the questions nor the answers thereto can the judgment of the Commissioner be allowed play as to what is or is not material, so as to make permissible such changes as these after signature and oath. If it could,

there would be no assurance that any deposition came to the hands of the clerk of the court as the witness left it.

In the case of the Winooskie Turnpike Company v. Ridley, 8 Vermont, 404, where the magistrate, after the deposition of a witness was taken, read over and sworn to, concluded that he had made a mistake in writing that witness had testified that a certain conversation took place "on the bridge", and changed the words to "at the bridge", the Supreme Court of Vermont reversed a judgment because the deposition had not been suppressed. It said: "Depositions are a species of evidence in suits at law altogether unknown to the common law. * * * They are, moreover, a species of evidence of a most unsatisfactory character and should always be received with the utmost caution. The legislature have guarded them with great care, and the courts have rightly enforced all the safeguards which the legislature has established. The statute requires that they shall be signed by the deponent as well as sworn to. The object of signing is doubtless to make the deponent responsible for the phraseology of the deposition, for by signing he adopts the language as his own. Had the statute required that the magistrate only should sign the paper, the committing the testimony to paper might be considered the act of the magistrate, and the peculiar language used might perhaps be considered as his. In such a case, it might be competent for the magistrate, so long as the paper remained under his control, to correct the phraseology according to his understanding of the purport of the testimony. But under the statute, the language of the deposition must be considered emphatically the language of the witness, and he alone is responsible for its correctness. If then a deposition be altered in a material part after it is signed and sworn to, it is no longer the thing sworn to, and the witness is no longer responsible for it. * * * In short the paper so altered is no longer the testimony of the witness and cannot be regarded as such. * * * The evidence did not consist in the written deposition signed and sworn to by the witness with all the forms and under all the safe-

guards provided by the statute, but in the testimony of third persons as to what the witness testified to before the magistrate.

. Another most satisfactory reason for rejecting the evidence is to be found in the extreme danger of suffering the magistrate thus to tamper with the instrument. Every consideration of general expediency, as connected with the elucidation of truth and with safety in the administration of justice, forbids it. To admit this evidence would be unsafe in the particular instance and dangerous in the last degree as a precedent."

The court then discusses the argument of counsel for the appellee that the alteration of "on" to "at" was immaterial, and says that it must be considered material because "on" implied that the bridge was standing and that the witness was on it when the conversation took place, and there was evidence in the case that the bridge was not raised until a few days after the date of the conversation. "If the bridge was not in existence at the time, the circumstance certainly establishes an inaccuracy in the particular of either time or place. How far this might have impaired the credibility of the witness in the minds of the jury, is not for us to determine. It certainly had such a tendency, and if so, it was material, whether in a greater or less degree, is unimportant." The court then proceeds: "Whether an alteration, *in no sense material, as a correction of errors in orthography, or grammatical expression,* would vitiate the deposition, is a point not before us, and which we do not decide. But we are all agreed, that an alteration by the magistrate, after the deposition is signed and sworn to, without the assent of the deponent in a particular in any sense material, is fatal to the evidence."

. We think this language of the Supreme Court of Vermont, while of course not controlling, very pertinent in the case at bar.

To say nothing of the changes in the interrogatories, which might pass perhaps as corrections in grammatical expression, it cannot be said that in any such sense the answer

to the question whether the witness continued to lean out of the car until the collision,—"as they came together I ducked in"—is a correction of "as they came together I jumped off." It may be said that it is highly improbable that the change affected the jury's opinion on the credibility or accuracy of the witness, or any reasonable argument that could be made in relation thereto, but the vice of such reasoning is apparent. It makes the court the judge of what effect or want of effect on the mind of jurymen differing statements of fact would have—a manifestly dangerous thing.

We hold that to sustain the court below in overruling the motion to suppress this deposition of Affleck after it had been opened and filed the second time, would be "dangerous in the last degree as a precedent." As the deposition should have been suppressed, it follows that it was erroneously read in evidence. It was full of matter material to the issues in this case and tending to fix liability on the appellant, the Chicago City Railway Co., and we must reverse the judgment and remand the case upon this ground alone. But as the case will probably be retried, it is proper that we should express ourselves on other questions raised on the appeal. This we shall do, however, with as little elaboration as possible.

Complaint is made by the appellant, the City Railway Co., that the witness Affleck in his deposition refused to answer many material questions propounded to him on cross-examination by that company, and that material answers to questions which he did make were excluded by the trial judge as immaterial. As the deposition of Affleck may be retaken, or he may be produced as a witness at the trial, it is proper for us to say that we think the witness went in his refusals dangerously near to the line which would have rendered it proper to suppress the deposition, and that while we should not reverse the cause for the rulings of the trial judge on the excluded answers, it should be the rule in a retrial that any questions on cross-examination seeking to show the relations between the witness and the party call-

ing him are, on general principles, competent as affecting credibility.

Both appellants argue that the two instructions given at the request of the plaintiffs and numbered 3 and 4, are so erroneous as to require a reversal. They are as follows:

"3. The jury is instructed that if they believe from the evidence that John Schaefer was a passenger on the car of the Chicago City Railway Company, July 2, 1901, and that without fault on his part, and while in the care of the Chicago City Railway Company, as a passenger, was struck and injured in a collision between such car and a truck wagon of the Joseph Stockton Company, through or by the negligence in manner and form as charged in the declaration or some one count thereof, of the operator of either the car of one defendant or the wagon of the other defendant, without fault on the part of the co-defendant, then the plaintiff is entitled to recover against the defendant, if any, guilty of negligence under the evidence, a sum not exceeding fifty thousand dollars, as you may find from the evidence in the case, in compensation for any and all injuries sustained by him, if the jury believe from the evidence the plaintiff sustained injuries by reason of such collision."

"4. The jury is instructed that if they believe from the evidence that John Schaefer, on the 2nd day of July, 1901, was a passenger upon the car of the Chicago City Railway Company, and that without fault of his own he was struck and injured in a collision between a truck wagon of the Joseph Stockton Company through the negligence or want of care of the operators of such truck and street car, in manner and form as charged in the declaration or some one count thereof, then the plaintiff is entitled to recover in this suit against both defendants, and the plaintiff's measure of damages is compensation for all the injuries temporary and permanent sustained by him, if the jury believe from the evidence the plaintiff has sustained such injuries."

Both these instructions are open to serious criticism, be-

Chicago City Ry. Co. v. Schaefer.

cause they authorize compensation in the damages for *all* injuries sustained by the plaintiff. This was erroneous, it seems to us, in two particulars. There are certain injuries for which damages cannot be recovered in an action like this, and certain other injuries, as the word is generally used at least, for which they cannot be. Of the latter class are, for example, mental suffering and chagrin, not the direct result of physical pain, but caused by bodily defects which are the result of the accident. We think that the cases cited by appellants in their respective briefs on this matter from the Appellate Court reports are in point. Mc-Ginnis v. Berven, 16 Ill. App., 354; C. & G. T. Ry. Co. v. Spurney, 69 Ill. App., 549; Chicago City Ry. Co. v. Canevin, 72 Ill. App., 81; Lake Street R. R. Co. v. Gormley, 108 Ill. App., 59; Chicago City Ry. Co. v. Deyo, Appellate Court of First District, June 3, 1904.

We see, moreover, no escape from the objection urged to these instructions, that the pecuniary loss in earning power during the minority of the plaintiff could not properly be included in the damages assessed, because it would be the loss of the plaintiff's parent and not of the plaintiff. Western Union Telegraph Co. v. Woods, 88 Ill. App., 375.

And again we think the third instruction faulty in form, in that it assumes that if the plaintiff was a passenger on the car of the Chicago City Railway Company, he must have been in the care of said company, whereas it was a distinct defense urged by the appellants that the plaintiff had assumed the risk of accident from his exposed position because he had unnecessarily refused to abandon it at the request of the railway company's agent. This theory is recognized by other instructions and should be, we think, in this.

Such serious faults as we have indicated in instructions given in a closely contested case, where the verdict rendered was so large, would have made a new trial, we think, necessary, if there had been no other reason for it.

The appellant, the City Railway Company, complains with urgency of the instruction given to the jury at the re-

quest of its co-defendant, the Stockton Company, and num-
bered 37. We think that the objections so made to it are
well founded. It is as follows:

"37. The court instructs the jury that under the law
and evidence of this case, they can find both defendants
guilty, or both defendants not guilty, or either one of the
defendants guilty and the other defendant not guilty."

The City Railway Company argues that this instruction
told the jury that they could render the verdict which they
actually did render, against both defendants, irrespective of
what they might believe from the evidence. It was, in other
words, it is insisted, a substitution of the court's belief or
opinion for the jury's and an instruction that the law and
the evidence authorized any verdict which the jury saw fit
to render. It is quite obvious that the purpose of the in-
struction was merely to advise the jury of their right to
find both defendants guilty if they believed from the evi-
dence those things necessary to charge both defendants
under the law as given by the instructions of the court, and
so as to one only, while if they did not believe from the
evidence that which under the law would make either liable,
they could find them both not guilty. Very possibly the
jury so undertsood it when taken in connection with the
other instructions. But it is not sufficient even that we
should think that the jury probably so understood it, if it
is so incorrect that it can on any reasonable ground be held
possibly to have misled the jury. It is very doubtful
whether we should not have felt obliged to reverse this judg-
ment and remand the case for the giving of this erron-
eous instruction, even if the error concerning the Affleck
deposition had not intervened, and we could have passed
over the defects in instructions 3 and 4.

The Joseph Stockton Company as appellant complains of
instruction No. 24, given at the instance of its co-defend-
ant, the City Railway Company. It is as follows:

"24. The jury are instructed that by reason of its con-

venience to the public as a carrier of passengers, and because of the inability of its cars to turn out, a street railway company, at points on its line other than street crossings, is invested with the right of way over other vehicles over the portion of streets occupied by its railroad, and it is the duty of drivers of such vehicles to turn out and allow its cars to pass and to use care not to obstruct or delay the same, and if the jury believe from the evidence that the driver of the transfer wagon neglected such duty, then the jury have a right to take into consideration in determining whether or not the defendant, Chicago City Railway Company, was guilty of the negligence charged in the declaration, the fact that the said railway company was invested with the right of way over other vehicles over that portion of the street in question upon which it ran its cars."

'Although this instruction could not be complained of by the appellant, the City Railway Co., we will discuss it and such other matters as are alleged to be erroneous and injurious to the Stockton Company in this opinion, which, although filed in the appeal of the railway company, will be referred to as also stating our conclusions in the appeal of the Stockton Company. We think this instruction, under the circumstances of this case, was very likely to mislead the jury, and that it should not have been given. The paramount right of the City Railway Company to the tracks was not in issue in this case and should not have been presented in a manner to the jury which would be likely to have given them the suggestion that it was.

We think the authorities cited by the Stockton Company on this instruction are in point. West Chicago Street Railway Co. v. Schwartz, 93 Ill. App., 387; Kansas City F. S. & M. R. Co. v. Stoner, 49 Fed. Rep., 209; Frank v. Metropolitan Street Railway Company, 86 N. Y. Supp., 1018; Chicago City Railway Co. v. Lannon, 212 Ill., 477. Whether or not the giving of this instruction in connection with many others which stated clearly the real issues in the case as against both and each of the defendants would have

been held by us to be reversible error, if no other obstacle to affirmance had been found, it is not necessary for us to decide. It is sufficient for our purpose here to say that this instruction should not be repeated on another trial.

Instruction 25 is also objected to by the Stockton Company. It is as follows:

"25. If the jury believe from the evidence that the wagon with which the car in question came in collision was driven and managed in a careless and unskillful manner, and that such manner of driving said wagon, if it was so driven, was the sole cause of the injury to John Schaefer, now complained of, then the jury must find the defendant, Chicago City Railway Company, not guilty. The court instructs the jury that the Chicago City Railway Company defends this case separately from the other defendant, and if the jury find the other defendant guilty in this case the jury cannot find the Chicago City Railway Company also guilty, unless they believe that the greater weight of the evidence shows that the proximate cause of the injury to Schaefer was negligence in the management and control of the street railway car."

It is argued by the Stockton Company that the first half of the instruction is erroneous, because the declaration does not charge the negligence of the wagon owner to be unskillfulness in driving. We do not think the instruction is open to criticism on this score. The declaration charges that the defendants *respectively* negligently ran, operated and managed their car and wagon so as to cause them to collide, etc., and driving "in a careless and unskillful manner," we think is negligently managing a wagon.

The second half of the instruction is objected to by the Stockton Company on the ground that "it was not true that the jury could find one defendant guilty and the other one not guilty," and that "if either defendant had been successful in proving that it was not guilty of the specific negligence charged to it, then no recovery could be had under

the declaration because there could have only been a joint recovery. This contention of the Stockton Company is in strong contrast with the instruction No. 37, given at its instance, which we have criticised, and no authority is cited for it. We do not agree with it. It would be hard to frame a declaration in this case which did not allow a recovery against either defendant. Certainly the present one does so allow it. The difficulty is rather, under this evidence, to see how a verdict can be sustained against both, and this contention, hereinafter to be again alluded to, is in other portions of the Stockton Company's argument vigorously pressed.

We do not think that instruction 25 is erroneous.

The City Railway Company complains of the following instruction, given at the instance of the Joseph Stockton Company:

"32. The court instructs the jury that in considering the question of whether or not the defendant, The Joseph Stockton Company, by its driver, was negligent in the manner in which the wagon in question was being managed at the time the said plaintiff was injured, as set forth in the plaintiff's declaration herein, or some count thereof, the jury have the right to and they should consider all the circumstances surrounding the place where the alleged injury is said to have been received. They should consider the condition of the street, and the situation of the tracks laid thereon, and having considered all the circumstances and conditions existing at the time, then if they believe from the evidence that the driver of said wagon was not negligent in the manner charged in the declaration or some count thereof, your verdict as to The Joseph Stockton Company, should be not guilty."

We do not think that under the circumstances of this case this instruction is properly subject to the attack made on it by the railway company as unduly emphasizing or selecting for comment certain phases of the testimony. Neither it

23

nor instructions 36 and 40, complained of on substantially the same grounds, fall fairly within the authorities cited by the railway company.

The City Railway Company offered the following instructions, numbered 1 and 2, which were refused, and their refusal the railway company argues was reversible error.

"1. If you believe from the evidence that a person of ordinary prudence having the same age, experience, intelligence and ability to care for himself that the plaintiff had, would under all the facts and circumstances shown by the evidence in this case, have kept a lookout to the front and side of the car while he was riding upon the footboard, and if you further believe from the evidence that the plaintiff did not keep any lookout to the front or side of the car and that he failed to pay any attention to the condition of the street with reference to whether or not there were any vehicles near the course of the car, then the jury must find the defendant not guilty."

"2. If you believe from the evidence that the car upon which Schaefer was riding contained unoccupied seats before and at the time of the collision in question, and that Schaefer knew or could have known by the exercise of reasonable care on his part that there were such unoccupied seats, and if you further believe from the evidence that Schaefer voluntarily and unnecessarily rode upon such footboard, then you must find the defendant Chicago City Railway Company not guilty."

The first of these proffered instructions we think was clearly properly refused. It made the judge the arbiter of what was contributory negligence, rather than the jury, and singled out one particular matter to which the attention of the jury was alone to be directed in determining it.

The second instruction was a correct statement of the law, in our opinion, so far as it merely involved the proposition that a passenger who rides on the footboard outside the car when it is reasonably practicable for him to take a seat within it, assumes the risk of his position; but we do

not think it was reversible error to refuse it, especially in view of instructions 16, 17, 20, 29 and 31, given at the instance of the railway company. These instructions clearly expressed the law and left to the jury the questions of fact involved in the question of contributory negligence which was raised.

It is assigned as error by both the appellants (but argued only by the City Railway Company) that motions in arrest of judgment by the defendants were overruled by the court. We do not think that this action of the court was in error. The declaration, in our opinion, stated a cause of action with sufficient particularity to meet the requirements of the law as laid down in Chicago City Railway Company v. Jennings, 157 Ill., 274, and other cases. It is not now worth our while to discuss whether or not the bill of particulars sought for by the City Railway Company should have been ordered. It is quite evident that on a second trial of the cause the company will not be, even without such a bill of particulars, destitute of notice "of the nature of the claim against it with greater particularity than is required by the rules of pleading."

Various errors in the admission and exclusion of evidence are alleged and argued by the City Railway Company. We think that in a retrial of this case, inquiry into the movements of the plaintiff and his companion on the car should not be confined by the ruling of the court to the precise time of the accident, but that it should be allowed as to a reasonable time preceding. Such movements might well have a bearing on the questions of contributory negligence and the assumed risk of the position.

We think that due latitude on cross-examination would have admitted the questions to Mrs. Lentz and to Skinner inquiring concerning contradictory statements made by them, but we see no error in the exclusion of Mr. Holmes' testimony, which is complained of, nor do we think the hypothetical question to Dr. Loring improper. There was no error in the refusal to exclude the testimony of the physicians as to the tests of plaintiff's eyesight. The questions

to Smith and Chapman concerning giving their addresses to the conductor, although not very material, might properly, we think, have been allowed.

It is manifestly unnecessary for us to discuss the question of the refusal of a continuance.

For the reasons hereinbefore given, the admission of the Affleck deposition in evidence and the giving of instructions 3, 4 and 37, we shall reverse the judgment and remand the case. We do this for errors in the conduct of the trial with less reluctance than we should if the judgment seemed to us more thoroughly in accord with the weight of the evidence.

Motions were made at the close of the plaintiff's evidence and repeated at the close of all the evidence, by the defendants respectively, for instructions to find them respectively not guilty. There was conflicting evidence, and we do not think either of such instructions should have been given.

And as this case is probably to be retried, we do not purpose to discuss the question of the preponderance of the evidence in favor of or against any parties to the controversy. It is not necessary, in view of the conclusion that we have reached, for us to take up the question of the action of the trial court in refusing a new trial on the ground that the verdict was contrary to the evidence, nor to indicate our own view of it, and we do not think it desirable to do so with any particularity. But we think it proper to say that although there may easily be a case of collision of vehicles of this character, resulting in injury to a third party in which both the vehicle owners would be liable, and although there is conflicting evidence in this cause, the tendency of which is to show each of the defendants liable, we do not clearly see how in this case the jury could properly, from the evidence presented, have found both guilty.

We are not inclined to think we should have felt justified in the reversal of the judgment and remanding this case simply on account of the amount of the verdict, but we think it very liberal for the damages proven, and the allusion to the plaintiff's orphanage should of course not have been

made by counsel. It is not, therefore, wholly to be regretted that the judgment of another jury must be sought on the amount of damages, if any, to be awarded.

*Reversed and remanded.*